Filed 6/18/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FRANK SABIA et al., | B243141 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC469744) |
| v. | |
| ORANGE COUNTY METRO REALTY, INC., et al., | |
| Defendants and Respondents. | |

     APPEAL from an order of the Superior Court of Los Angeles County. William F. Highberger, Judge. Reversed and remanded.

     Van Etten Suzumoto & Sipprelle, David B. Van Etten and Keith A. Sipprelle for Plaintiffs and Appellants.

     Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, Esther P. Holm; Carlson Law Group, Mark C. Carlson and Warren K. Miller, for Defendants and Respondents Orange County Metro Realty, Inc., Republic Realty Services, Inc., Joseph A. Broderick, Brenda Caballero, Elizabeth Broderick, Victoria Viveros, Charles Penusis, and Marshal L. Lewis.

     Law Office of Robert E. Gibson and Robert E. Gibson for Defendant and Respondent The Master Game.

_____

In this appeal we are presented with the recurring issue of the reach of the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, 131 S.Ct. 1740 (*Concepcion*) as it impacts unconscionability as a state law defense to arbitration provisions. The unconscionability defense has been the subject of three relevant California Supreme Court cases filed both before and after *Concepcion* – *Armendariz v. Foundation Health Psychcare Servs.* (2000) 24 Cal.4th 83 (*Armendariz*); *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659 (*Sonic I*), vacated and remanded by *Sonic-Calabasas A, Inc. v. Moreno* (2011) __ U.S. __ [132 S.Ct. 496]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223 (*Pinnacle*); and *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1159-1160 (*Sonic II*), cert. den. (2014) ___ U.S. ___ [82 USLW 3462]. Each of these cases upholds unconscionability as a viable defense to an arbitration provision.

We are bound by precedent established by our Supreme Court (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450), and are not free to anticipate what the United States Supreme Court might decide if presented with the case currently before us. Accordingly we apply our state law of unconscionability to the facts of the case. In so doing, we conclude that the arbitration provision here was unconscionable principally because it applied only to plaintiffs. We therefore reverse the trial court's order granting a motion to compel arbitration.

## FACTS AND PROCEDURAL HISTORY

Frank Sabia and eight other persons filed a class action complaint against mortgage foreclosure consultant The Home Defender Center and several other persons and entities allegedly affiliated with Home Defender for fraud, breach of contract, and other statutory and common law claims, alleging that they were duped into signing their agreements and lost the money they paid for services that were never rendered.[1]

---

[1] The plaintiffs were Frank and Elidia Sabia, Armando Flores, Eladio and Blanca Campos, George and Melissa Cruz, and Raul and Rita Venegas. We will refer to them collectively as plaintiffs. Plaintiffs' individual claims ranged from $3,500 to $4,500.

Defendants brought a petition to compel arbitration based on the following provision in their written agreement with plaintiffs: "If a dispute arises between Home Defender Center and Client regarding Home Defender Center's actions under this agreement and Client files suit in any court other than small claims court, Home Defender Center will have the right to stay that suit by timely electing to arbitrate the dispute under the Business and Professions Code, in which event Client must submit the matter to such arbitration. The parties agree to bring any such action or proceeding in a state or federal court of competent jurisdiction in Orange County, California, and that jurisdiction and venue are proper in Orange County."

Defendants also contended that arbitration on a classwide basis was prohibited pursuant to *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 (*Stolt-Nielsen*) because the arbitration provision did not mention classwide arbitration.[2]

---

The entity defendants were: Master Game, Inc., dba the Home Defender Center; Orange County Metro Realty, Inc., dba RE/Max Metro and RE/Max Metro Realty; Orange County Metro Properties, Inc., dba RE/Max Metro; and Republic Realty Services, Inc., dba RE/Max Metro Real Estate Services. The individual defendants were Victoria Viveros, Arturo Diaz, Charles Penusis, Marsha Lewis, Joseph A. Broderick, Brenda Caballero, Dereck Markovic, and Elizabeth Broderick. Some worked for or were in controlling positions at Master Game/Home Defender, while others were either real estate agents or brokers who either controlled or worked for the various real estate entity defendants that allegedly arranged or took part in the disputed transactions. We will refer to them collectively as defendants.

The class action complaint included the following causes of action: (1) Civil Code sections 2945-2945.11, which govern foreclosure consultant contracts; (2) Civil Code section 1632, which requires that contracts negotiated in a foreign language must be written in that language; (3) unfair business practices (Bus. & Prof. Code, § 17200 et seq.); (4) breach of contract; (5) various forms of fraud and negligent misrepresentation; (6) common counts; and others.

[2] Federal law is applicable here because, as plaintiffs concede, their agreements with Home Defender involved interstate commerce and were therefore subject to the Federal Arbitration Act. (9 U.S.C. § 1 et seq.; FAA.)

3

Plaintiffs opposed the petition on the following grounds: First, the clause was not enforceable because its references to courts and the venue for actions, along with its mention of nonexistent Business and Professions Code arbitration rules, made it hopelessly ambiguous. Second, the arbitration provision was void under the doctrine of unconscionability, an ordinary contract law defense available under the FAA. (9 U.S.C. § 2.)

Plaintiffs' opposition was supported by declarations from four of the nine named plaintiffs: Eladio Campos, Armando Flores, Elidia Sabia, and George Cruz. Distilled, they said that Spanish was their native language and that defendant Viveros explained in Spanish that Home Defender would try to obtain a loan modification for them. Viveros said that their up-front fee payments would be held in escrow and returned to them if Home Defender failed to obtain a loan modification. Viveros then handed them a pile of English-language documents that included their agreement with Home Defender and told them not to worry about the contents because they stated in English what she had explained to them in Spanish. Viveros never mentioned that the agreement included an arbitration provision. Sabia said Viveros told her to hurry and sign the documents because Viveros needed to leave right away.

Plaintiffs contended the arbitration provision was procedurally unconscionable because the declarations showed they signed adhesion contracts written in English when the terms were explained in Spanish, and because the arbitration provision did not include or attach the Business and Professions Code rules mentioned in the provision. They contended the arbitration provision was substantively unconscionable because it applied to only actions brought by them, leaving Home Defender free to sue in court for any claims it might have. Plaintiffs also contended that this defect could not be cured by severing it from the provision.

In reply, defendants argued that the lack of mutuality in the one-sided arbitration provision was not grounds for invalidating that provision under *Concepcion*. Defendants also argued that the arbitration clause was either not ambiguous, or that any ambiguities

4

were overcome by its clear and express statement that Home Defender could require arbitration.

Defendants also asserted the agreement was not procedurally unconscionable because, as evidenced by some of the plaintiffs' own handwritten letters and notes in Home Defender's files, they could read and write in English. Defendants also pointed to Spanish-language forms signed by the plaintiffs stating that plaintiffs had read the documents presented to them. They also contended that the provision was not substantively unconscionable because mutuality of obligations was not a prerequisite to forming a valid contract and because decisions cited by plaintiffs in their opposition were inapplicable. Finally, defendants contended that even if unconscionability existed, any such terms could be severed.[3]

As part of its order granting the petition to compel arbitration, the trial court noted that only four of the nine named plaintiffs submitted declarations. As to those, the trial court found that they were still bound by the contracts even if they did not read them in advance or obtain a translation in Spanish. The trial court cited *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 959 (*Brown*) to support that finding.

The trial court found that any ambiguities surrounding the references to rules of the Business and Professions Code or to venue for actions or courts were not sufficient enough to render the arbitration provision unenforceable because the agreement "clearly called out binding arbitration as the dispute resolution mechanism for disputes unless they were first filed in small claims court."

The trial court found that plaintiffs did not "show that the agreements are unconscionable to such a degree that they should not be enforced." On the issue of procedural unconscionability, the trial court said that the mere fact that the agreements were adhesion contracts was not enough, and that the plaintiffs' "generalized assertions" that they were told the contract repeated in English what they had been told in Spanish

---

[3] Defendants have abandoned that contention on appeal.

5

was also insufficient to show procedural unconscionability. Plaintiffs' alleged failure to obtain Spanish translations of the documents was also insufficient, the trial court found.

The trial court found that the provision was "not substantively unconscionable at all as it furthers the public policy of the FAA, as interpreted by the United States Supreme Court, to send matters to arbitration when a contract so authorizes." In connection with this finding, the trial court cited *Iskanian v. CLS Transportation Los Angeles*, *LLC* (2012) 206 Cal.App.4th 949, as to which review was granted by the California Supreme Court three months later (S204032) for the proposition that the state courts must follow United States Supreme Court precedent on this issue.

Finally, relying on *Stolt-Nielsen*, *supra*, 559 U.S. 662, the trial court ordered arbitration as to plaintiffs' individual claims alone, concluding that its ruling was the "death knell" of any classwide resolution of the dispute.

## STANDARD OF REVIEW

Under both the FAA and its California counterpart there is a strong public policy in favor of arbitration. (*Brown*, *supra*, 168 Cal.App.4th at pp. 953-954.) Doubts regarding the validity of an arbitration agreement generally are resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.) Under the FAA, however, arbitration agreements may be invalidated under generally applicable contract defenses. (9 U.S.C. § 2.)

Because unconscionability is a contract defense, plaintiffs bore the burden of proving the arbitration provision was unenforceable on that ground. (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708.) Unconscionability is a question of law that we review independently when there are no meaningful factual disputes in the evidence. We review the trial court's resolution of disputed facts under the substantial evidence standard. When the trial court does not make express findings, we infer that it made every factual finding necessary to support its order, and review those implied findings for substantial evidence. (*Ibid.*)

6

**DISCUSSION**

1. *The Order Compelling Arbitration Was Appealable*

Defendants contend we should dismiss the appeal because orders compelling arbitration are not ordinarily appealable. (*Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 19 (*Elijahjuan*).) One exception to this rule is when an order compelling arbitration effectively acts as the "death knell" for any class claims by effectively terminating them. (*Ibid.*)

We agree with the trial court that its ruling was the death knell of plaintiffs' class claims. The court in *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277 (*Franco*) held that the death knell doctrine applied to a trial court order compelling arbitration of a plaintiff's individual wage claims. The plaintiff filed a class action complaint on behalf of himself and other similarly situated employees, but the trial court enforced the class action waiver provisions of the parties' arbitration agreement and ordered the plaintiff to litigate only his individual claims. By doing so, the *Franco* court held, the trial court sounded the "death knell" of plaintiff's class litigation. (*Id.* at p. 1288.)

The trial court here found that under *Stolt-Nielsen*, *supra*, 559 U.S. 662, the arbitration provision's silence on the issue of classwide proceedings precluded any classwide dispute resolution and ordered the plaintiffs to arbitrate their individual claims. Defendants try to distinguish this case from *Franco* because the trial court in *Franco* dismissed the civil action while the trial court in this case stayed the civil action. However, the *Franco* court did not mention the dismissal of the action as a factor in its death knell analysis, focusing instead on the order to arbitrate only individual claims.

Upon request of a party, the trial court ordering arbitration must stay a civil action covered by the arbitration provision. (Code Civ. Proc., § 1281.4.) The effect of such a stay is to retain at best "vestigial jurisdiction" in the trial court with the power to appoint arbitrators if the parties' selected method fails, grant a provisional remedy, and confirm, correct, or vacate the arbitration award. (*Optimal Markets*, *Inc. v. Salant* (2013)

7

221 Cal.App.4th 912, 923.)  This leaves the civil action in a "twilight zone of abatement." (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796.)

It is unclear whether the party moving to compel arbitration in *Franco* asked for a stay.  Regardless, we see little difference between dismissing an action and leaving it in the legal equivalent of the Phantom Zone where its existence would be that of a legal shade.  In either case, class wide dispute resolution has been eliminated.  We therefore reject defendants' attempt to distinguish *Franco*.

Defendants also contend that the death knell doctrine does not apply unless the order compelling arbitration makes it impossible or impracticable for the plaintiffs to proceed with the action at all as either an individual or class action.  They cite *Nelsen v. Legacy Partners Residential*, *Inc.* (2012) 207 Cal.App.4th 1115, 1123 (*Nelsen*) for this proposition, which in turn quoted *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098 (*Szetela*).  Neither case is applicable.

The plaintiff in *Szetela* filed a class action lawsuit against a credit card company, which then obtained an order compelling arbitration of the dispute on only an individual basis pursuant to a provision in the credit card agreement that required arbitration and precluded classwide claims.  The plaintiff arbitrated his dispute, and, after being awarded $29, appealed the order compelling arbitration.  In the interim, a second amended complaint was filed that added a new class representative who was not bound by the arbitration provision.  The *Szetela* court deemed the appeal a petition for writ of mandate after deciding that the death knell doctrine did not apply despite plaintiff's contention that the effect of the trial court's order was to sharply limit the scope of the class.  (*Szetela*, *supra*, 97 Cal.App.4th at p. 1098.)

As part of its general discussion of the death knell doctrine, *Szetela* cited *Richmond v. Dart Industries*, *Inc.* (1981) 29 Cal.3d 462, 470 (*Richmond*) for the proposition that "the death knell doctrine permits the appellate court to review an order denying a motion to certify a class when it is unlikely the case will proceed as an individual action." (*Szetela*, *supra*, 97 Cal.App.4th at p. 1098.)

8

However, *Richmond* says no such thing. Instead, citing *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 698-699, the *Richmond* court said that a trial court order "denying certification to an entire class is an appealable order." (*Richmond*, *supra*, 29 Cal.3d at 470.) *Szetela's* citation to *Richmond*'s true holding makes sense in the context of *Szetela* – where the death knell doctrine was found inapplicable because the case would still proceed as a class action, albeit one limited to persons not bound by the arbitration provision. As best we can determine, however, *Szetela* simply misquoted *Richmond*. This error was repeated in *Nelson*.

*Nelsen*, *supra*, 207 Cal.App.4th 1115, treated a plaintiff's appeal from an order compelling arbitration of her class action complaint for wage and hour law violations on an individual basis only as a petition for writ of mandate. The *Nelsen* court also discussed the death knell doctrine. The court first cited *Daar v. Yellow Cab Co.*, *supra*, 67 Cal.2d 695, which held that the death knell doctrine applied to an order sustaining a demurrer to a class action complaint and transferring the matter to the municipal court as to plaintiff's individual claims only. *Darr* held that the trial court's order determined the legal insufficiency of the complaint as a class action and preserves for "plaintiff alone his cause of action for damages. In its 'legal effect' the order is tantamount to a dismissal of the action as to all members of the class other than plaintiff. It has virtually demolished the action as a class action." (*Daar,* at p. 699, citations omitted.)[4]

*Nelsen* then cited *Szetela*'s statement about the death knell doctrine applying "when it is unlikely the case will proceed as an individual action." Based on this, *Nelsen* concluded that because the plaintiff could pursue her individual claims through arbitration, the death knell doctrine did not apply absent some showing that it was impossible or impractical for her to do so. (*Nelsen*, *supra*, 207 Cal.App.4th at p. 1123.)

We disagree with *Nelsen*. The appellate court uncritically quoted *Szetela* without examining the true underlying context. Second, *Nelsen* and *Szetela* are flatly at odds with *Daar v. Yellow Cab Co.*, *supra*, 67 Cal.2d at pages 698 and 699 and our Supreme Court's

---

[4]    The *Nelsen* court was actually citing a quote from *Daar* that was set forth in *General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 251.

9

most recent explanation of the death knell doctrine, which holds that the death knell doctrine applies to rulings that "effectively terminate class claims but permit individual claims to continue." (*In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 754.) *Nelsen* never mentioned *Baycol*, and we therefore choose not to follow that decision. As a result, we conclude that the death knell doctrine applies and the order compelling plaintiffs to arbitrate is appealable.

2.      *The Contract Terms Are Not Fatally Ambiguous*

Plaintiffs contend the arbitration provision is unenforceable because it is both unintelligible and ambiguous in three respects: (1) it calls for arbitration pursuant to unspecified "rules" of the Business and Professions Code; (2) it refers to courts and venue for actions in Orange County, which could be construed to permit litigation; and (3) it merely gives Home Defender the right to stay any superior court action but does not give it the power to compel arbitration. Although we have little doubt that these provisions were either inapplicable or poorly phrased and thus in the abstract may have caused confusion, we disagree that they made the agreement legally unenforceable.

As defendants point out, given the strong public policy in favor of arbitration, if an arbitration provision is ambiguous, it must, if possible, be interpreted in a manner that makes it lawful and operative. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473 (*Roman*).)

The failure to specify an arbitration method or procedure is not fatal because the provisions governing arbitration provide that in such a case the trial court will appoint an arbitrator. (Code Civ. Proc., § 1281.6; *HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1103.) Therefore, even though, as defendants concede on appeal, the reference to the Business and Professions Code has no ascertainable meaning, that defect can be remedied.[5]

---

[5]      Defendants contended below that the reference to the Business and Professions Code might have been to the provisions governing arbitration of attorney-client fee

10

Although the provision does not expressly state that Home Defender has the power to compel arbitration, such language is not necessary given the clear expression of an intent to arbitrate, coupled with the statutory power to compel arbitration when one party to an arbitration provision files a civil action instead.

Finally, the provision's reference to venue in Orange County for actions or proceedings is also not hopelessly ambiguous. Instead, because the provision allows small claims actions, the provision should be interpreted in that light. The same language could apply equally in regard to jurisdiction and venue for petitions to compel arbitration as well as to cases where Home Defender elected not to seek arbitration of a superior court action brought by its clients.

3.    *General Principles of the Unconscionability Defense*

Plaintiffs contend the arbitration provision is unenforceable because it is both procedurally and substantively unconscionable. A written agreement to submit a dispute to arbitration is valid, enforceable, and irrevocable, except "upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) When one party to a written arbitration agreement refuses to submit to arbitration a dispute covered by the agreement, the other party may petition the court to compel arbitration unless the court determines that the right to compel arbitration has been waived by the petitioner, or grounds exist for revocation of the agreement. (Code Civ. Proc., § 1281.2, subds. (a), (b).)

Unconscionability is a defense to the enforcement of an entire contract, or particular provisions of a contract, including agreements to arbitrate disputes. (Civ. Code, § 1670.5, subd. (a).)[6] As noted earlier, the unconscionability defense is still

disputes. They do not make that contention on appeal. Neither side presently asserts that provisions of the Business and Professions Code have any applicability to this case.

[6]    Civil Code section 1670.5 is a codification of this common law contract enforcement defense. (*Dean Witter Reynolds*, *Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 766.)

available under section 2 of the FAA.[7]  (9 U.S.C. § 2; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1150 (*Samaniego*).)

The defense of unconscionability has two components – procedural unconscionability and substantive unconscionability.  The procedural component generally occurs in adhesion contracts that were drafted by the party with superior bargaining strength and are presented on a take it or leave it basis.  This inquiry focuses on oppression or surprise due to unequal bargaining power.  The substantive component turns on whether the terms are overly harsh or one-sided.  (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 468-469 (*Gentry*).)  Both must be present, but not in the same degree.  Instead, a sliding scale is employed, and the greater the presence of one component of unconscionability, the less of the other there need be in order to determine that a contract is not enforceable.  (*Id.* at p. 469.)

4.      *The Arbitration Agreement Was Substantively Unconscionable*

      (A)      The Agreement Is Unconscionably One-Sided

            *(i)      Overview of the Law Regarding Bilaterality*

The element of substantive unconscionability involves an inquiry into whether the contract terms are unfairly one-sided.  (*Gentry*, *supra*, 42 Cal.4th at p. 469.)  Although some courts have framed the test as whether the disputed provisions "shock the conscience," that is simply one of several nonexclusive formulations describing "the notion that unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.' [Citation.]" (*Sonic II*, *supra*, 57 Cal.4th at pp. 1159-1160.)

This principle was most famously articulated in the context of arbitration provisions in *Armendariz*, *supra*, 24 Cal.4th 83, which reversed the Court of Appeal and

_____

[7]      Defendants contend that finding the arbitration agreement is unconscionable because it requires only plaintiffs to arbitrate violates the *Concepcion* court's interpretation of section 2 of the FAA.  As set forth in section 4(A)*(ii)* of our discussion, *post*, we disagree.

12

affirmed a trial court ruling denying an employer's petition to compel arbitration of sex discrimination claims brought by two plaintiffs. The arbitration provision was deemed unilateral because it applied to only wrongful termination-related claims brought by employees. (*Id.* at pp. 115, 120-121.)

Although an arbitration provision need not mandate that all claims between employer and employee be arbitrated in order to avoid a finding of unconscionability, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Armendariz*, *supra*, 24 Cal.4th at p. 120.) The arbitration provision at issue in *Armendariz* lacked mutuality because it required employees, but not employers, to arbitrate claims arising out of a wrongful termination. As a result, an employee fired for stealing trade secrets would have to arbitrate his wrongful termination claim while the employer remained free to litigate its trade secrets claims. (*Ibid.*)

*Armendariz* cited with approval *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519 (*Stirlen*), where the Court of Appeal affirmed an order denying an employer's petition to compel arbitration of a former company top executive's action for wrongful termination in violation of public policy and other related claims. The arbitration provision was deemed unconscionably one-sided because it required the executive to arbitrate all disputes related to the termination of his employment, but excluded from arbitration all claims by the employer relating to protection of its intellectual property, along with enforcement of a covenant not to compete. The agreement also eliminated recovery for tort and punitive damages by limiting any award to the amount of actual damages for breach of contract, less mitigation of damages, and cut off employer liability for salary and benefits while the claims were arbitrated. (*Id.* at pp. 1528, 1533-1534.)

*Armendariz* has since been applied in several Court of Appeal decisions, including some post-*Concepcion*. For example in *Samaniego v. Empire Today, LLC*, *supra*, 205 Cal.App.4th at pages 1147-1148, the court held that the arbitration provision in a contract with carpet installers was substantively unconscionable because it excluded from

13

arbitration certain claims that only employers would bring, shortened the limitations period for bringing employee claims, and contained a one-sided attorney's fee provision. As for the impact of the then recent *Concepcion* decision, the *Samaniego* court succinctly stated: "We hold the provision is unconscionable and unenforceable under *Armendariz[, supra,]* 24 Cal.4th 83 []; that our consideration of the issues is governed by California law; and that the recent decision of the Supreme Court of the United States in *[Concepcion*, *supra,]* 131 S.Ct. 1740[], does not change our analysis." (*Id.* at p. 1141.)

Earlier decisions that had relied on *Armendariz* in finding one sided arbitration agreements unconscionable include: *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 486-487 (arbitration agreement was one-sided even though it referred to arbitration of all disputes because other qualifying language showed it applied to only employee claims); *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 724-726 (arbitration provision unconscionable where it excluded employee claims for workers compensation and unemployment benefits, along with employer claims concerning confidentiality and noncompetition agreements or intellectual property rights); *Flores v. Transamerica HomeFirst*, *Inc.* (2001) 93 Cal.App.4th 846, 854-855 (arbitration provision in reverse mortgage agreement held unconscionable where it said any disputes would be arbitrated, but allowed lender to pursue judicial and nonjudicial self-help remedies, including set-offs, foreclosure, injunctive relief, and appointment of a receiver; as a result, the provision realistically applied to only claims brought by borrowers).

### (ii)   *Application of* Armendariz a*nd Its Progeny to this Case*

The terms of Home Defender's arbitration agreement bring it within the rationale of these decisions. The provision applies when a client "files suit in any court other than small claims court" for disputes "regarding Home Defender Center's actions . . . ." In such cases, Home Defender has the option to insist on arbitration.

The net effect of this provision creates a two-pronged form of one-sidedness. First, by its terms, only plaintiffs must arbitrate their superior court claims if Home Defender so chooses, leaving Home Defender free to sue its clients for any claims it

14

might have. Second, it appears directly aimed at limiting a client's access to the courts to the $10,000 small claims threshold of recovery. (Code Civ. Proc., § 116.221.) In other words, plaintiffs who sustain anything more than a relatively modest amount of damages above and beyond the amount of the fees they paid – such as the loss of their home due to inaction or improper action by Home Defenders – must arbitrate. As the decisions cited above make clear, this type of one-sidedness is substantively unconscionable.

Defendants contend the provision is not one-sided because: (1) it is silent as to what would occur if it had sued and a client pressed for arbitration; and (2) under *Roman*, *supra*, 172 Cal.App.4th 1462, the provision can be interpreted to require arbitration by both parties.

At issue in *Roman* was an arbitration provision in an employment application that said "I hereby agree" to submit to binding arbitration all disputes and claims arising out of submission of the application or out of the applicant's subsequent employment. The *Roman* court held that such language created nothing more than an ambiguity that, under ordinary rules of contract interpretation, was best interpreted to mean that both parties were bound to arbitrate any disputes. In other words, the "I" referred to each party's respective obligations. (*Roman*, *supra*, 172 Cal.App.4th at pp. 1472-1473.)[8]

The Home Defender arbitration provision is not ambiguous. It uses no "I's." It states that Home Defender can force a client to arbitrate if the client sues outside of small claims court for disputes regarding Home Defender's actions. The provision is therefore expressly limited to actions brought by Home Defender clients against Home Defender, and cannot reasonably be construed as bilateral simply because it is silent as to Home Defender's right to litigate its claims. (See *Armendariz*, *supra*, 24 Cal.4th at p. 120 [lack

---

[8]     In another case that discusses the mutuality of an "I" clause, we rejected an employer's argument that "I" could be construed as "we." We held there was no bilaterality and that only the employee and not the employer was obligated to arbitrate. (*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1253-1254 (*Higgins*).) The *Roman* court acknowledged the differences in the arbitration clauses in the two cases. (*Roman*, *supra*, 172 Cal.App.4th at pp. 1472-1473.)

15

of mutuality existed even where arbitration provision did not expressly state that employer could litigate its claims].)

Although one-sided arbitration provisions may be justified by business realities that create a special need for the advantage, those realities must either be explained in the contract or factually established. (*Higgins*, *supra*, 140 Cal.App.4th at p. 1254, fn. 12.) The contract contains no such explanation and Home Defenders has never raised the issue. We therefore conclude that the provision is substantively unconscionable.

(B)     *The* Armendariz *One-Sidedness Rule Survives* Concepcion

Defendants contend that even if the provision were otherwise unconscionable, the *Armendariz* rule of mutuality is no longer good law after *Concepcion*, *supra*, 131 S.Ct. 1740. As stated at the outset, we recognize that the law in this area is evolving. It is not within our province to decide a case based on our prediction of what the Supreme Court might rule in a case not before it. (See *People v. Rogers* (2013) 57 Cal.4th 296, 342 ["trial court properly refused to predict how the Florida Supreme Court might rule on the issues"].) Time will tell whether the United States Supreme Court addresses the unconscionability defense; until then we are duty bound to follow recent decisions by the California Supreme Court that reaffirm that unconscionability, including the *Armendariz* bilaterality rule, survives *Concepcion* and are applicable here. We begin by examining *Concepcion*.

*(i)     The Holding of* Concepcion

*Concepcion* overruled *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*), which had held that *class action waivers* in a limited class of consumer contracts of adhesion were per se unconscionable in settings involving a scheme to defraud large numbers of consumers out of individually small sums of money because such waivers had the practical effect of exempting the wrongful party from responsibility for its willful misconduct. (*Id.* at p. 162.)

16

*Discover Bank* was expressly overruled by *Concepcion*, *supra*, 131 S.Ct. 1740 on the ground that it conflicted with the FAA. Even though *Discover Bank* involved the application of a standard contract defense that was ordinarily permitted under section 2 of the FAA, the *Concepcion* court concluded that, as applied, it had the effect of disfavoring arbitration and was therefore contrary to the FAA's animating philosophy of encouraging arbitration. (*Concepcion*, at pp. 1746-1748.)

State courts may not rely on the uniqueness of an agreement to arbitrate as a basis for holding that the agreement is unconscionable because that would allow the courts to do what the state legislatures cannot. (*Concepcion*, *supra*, 131 S.Ct. at p. 1747.) Examples of such rulings, the *Concepcion* court said, would be cases finding a consumer arbitration agreement unconscionable because it did not provide for judicially monitored discovery, did not apply the rules of evidence, or did not allow for a jury to decide the case. (*Ibid.*) Such holdings would "have a disproportionate impact on arbitration agreements" even though they seemingly fell under the savings clause of FAA section 2 as part of the generally applicable state law defense of unconscionability. (*Ibid.*)

The *Discover Bank* rule regarding class actions similarly interfered with arbitration, the *Concepcion* court held. While the rule did not require class wide arbitration, it essentially allowed any party to a consumer contract to demand it after the fact. (*Concepcion*, *supra*, 131 S.Ct. at p. 1750.) Although parties to an arbitration agreement are free to provide for class wide proceedings, such proceedings are generally unsuited to arbitration because they make it more time consuming, expensive, and formal. Imposing them on the parties when not provided for by their arbitration agreement was therefore inconsistent with the FAA's policy of enforcing arbitration agreements according to their terms. (*Id.* at pp. 1750-1753.)

> (ii)    Armendariz *Held That Bilaterality Is A Valid Defense Under the FAA*

Defendants contend the rule of one-sidedness as applied by *Armendariz* and other decisions violates *Concepcion* because a lack of perfect mutuality of obligation is not

17

generally grounds to invalidate a contract under California law. As a result, defendants argue, those decisions impose on arbitration agreements a degree of mutuality above and beyond what is ordinarily required for contracts generally, and hence do not come within the FAA section 2 savings clause.

Although *Armendariz* preceded *Concepcion* by 11 years, the *Armendariz* court considered and rejected this precise contention. After adopting the "modicum of bilaterality" rule enunciated in *Stirlen*, *supra*, 51 Cal.App.4th at page 1541, the *Armendariz* court distinguished the concept that lack of mutuality does not render a contract illusory from the principles of unconscionability. "We conclude . . . that in the context of an arbitration agreement imposed by the employer on the employee, such a one-sided term is unconscionable. Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, *Stirlen* and *Kinney*[9] are correct that the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (*Armendariz*, *supra*, 24 Cal.4th at p. 118.)

*Armendariz* then rejected the notion that enforcing this bilaterality rule singled out arbitration agreements for suspect status in contravention of the FAA. Agreeing with the court in *Stirlen*, *supra*, 51 Cal.App.4th at page 1551, the *Armendariz* court said, "the ordinary principles of unconscionability may manifest themselves in forms peculiar to the arbitration context. One such form is an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party. The application of this principle to arbitration does not disfavor arbitration." (*Armendariz*, *supra*, 24 Cal.4th at p. 119.)

According to *Armendariz*, *supra*, 24 Cal.4th at page 119, the judicial forum affords plaintiffs the advantages of discovery and the fact that judges and juries are more likely to follow the law instead of splitting the difference as arbitrators often do, thereby reducing damage awards. "An employer may accordingly consider a court to be a forum

---

**9** *Kinney v. United HealthCare Services*, *Inc.* (1999) 70 Cal.App.4th 1322.

18

superior to arbitration when it comes to vindicating its own contractual and statutory rights, or may consider it advantageous to have a choice of arbitration or litigation when determining how best to pursue a claim against an employee. It does not disfavor arbitration to hold that an employer may not impose a system of arbitration on an employee that seeks to maximize the advantages and minimize the disadvantages of arbitration for itself at the employee's expense. *On the contrary*, *a unilateral arbitration agreement imposed by the employer without reasonable justification reflects the very mistrust of arbitration that has been repudiated by the United States Supreme Court in Doctors' Associates*, *Inc. v. Casarotto [(1996)] 517 U.S. 681*, *and other cases.*" (*Id.* at pp. 119-120, italics added.)

### (iii) *Post-*Concepcion *Decisions Hold That A Lack of Bilaterality Is Still A Valid Defense Under the FAA*

Decisions of both the California and federal courts hold that *Concepcion* still permits voiding an arbitration provision that applies to only the party with the weaker bargaining strength, or is otherwise oppressively one-sided. (*Serpa v. California Surety Investigations*, *Inc.* (2013) 215 Cal.App.4th 695, 705 [arbitration agreement in employee handbook that on its face required only employees to arbitrate their claims would have been found unconscionable for lack of bilaterality except for the fact that arbitration rules incorporated by reference made clear that employer was also to arbitrate its own claims]; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 506 (*Truly Nolen*) [finding an adhesive arbitration provision unconscionable because it is overly one-sided does not disfavor arbitration]; *Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511, 1523 [arbitration provision in employee handbook unconscionable by forcing employee to relinquish federal and state statutory rights and by allowing arbitrator to prevent discovery]; *Ajamian v. CantorC02e*, *L.P.* (2012) 203 Cal.App.4th 771, 797-800 [arbitration provision in broker's employment contract unconscionable because it unreasonably limited damages available to the broker, and contained unilateral attorney's fee provision that might strip broker of right to

19

recover fees for statutory wage and hour claims]; *Noohi v. Toll Bros.* (4th Cir. 2013) 708 F.3d 599, 612-614 [applying Maryland law, *Concepcion* not violated by invalidating for lack of mutuality arbitration provision in home construction contracts that obligated only buyers to arbitrate their claims].)[10]

Most important, our Supreme Court has recently affirmed the continued vitality of the unconscionability defense in general, and the bilaterality doctrine in particular, after *Concepcion*.

Sixteen months after *Concepcion*, the court in *Pinnacle*, *supra*, 55 Cal.4th 223 considered the enforceability of an arbitration provision that a condominium developer included in the recorded covenants, conditions, and restrictions (CCRs) that required those who later purchased condominiums to arbitrate any construction related disputes. After concluding that the arbitration provision applied to the homeowners association (HOA) pursuant to the statutory scheme that governed common interest developments, the *Pinnacle* court considered whether the provision was nevertheless unconscionable.

The *Pinnacle* court began by citing *Armendariz*, *supra*, 24 Cal.4th at page 114, for the proposition that unconscionability was a generally applicable contract defense allowed under the FAA. (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) It also quoted *Armendariz* for the proposition that substantive unconscionability exists when contract terms are "overly harsh or one-sided." (*Ibid.*, citing *Armendariz,* at p. 114.) Although ultimately concluding that the arbitration provision was not unconscionable, the *Pinnacle* court considered the HOA's contention that the provision was substantively unconscionable under *Armendariz* because it applied to only the homeowners and therefore lacked bilaterality.

---

**10** Other Court of Appeal decisions have recognized that unconscionability remains a viable defense after *Concepcion* even if the facts of those cases did not support a finding of unconscionability. (*Sanchez v. Carmax Auto Superstores California*, *LLC* (2014) 224 Cal.App.4th 398, 403 [arbitration provision not substantively unconscionable because it was not unduly one-sided]; *Nelsen*, *supra*, 207 Cal.App.4th at pp. 1125-1126 [arbitration provision not unreasonably one-sided under *Armendariz*]. Both cases cite *Concepcion* for the rule that an unconscionable arbitration provision is unenforceable.

In rejecting that contention, the *Pinnacle* court pointed to the statement in *Armendariz*, *supra*, 24 Cal.4th at page 120, that arbitration provisions need not mandate arbitration of all claims between the parties to avoid a finding of unconscionability, and that arbitration clauses may be limited to a specific subject or subjects. (*Pinnacle*, *supra*, 55 Cal.4th at p. 248.) "Here, the challenged clause is limited to construction disputes. To the extent Pinnacle wishes to allege the [HOA's] comparative fault as an affirmative defense with respect to damages[], such issue would fall within the scope of [the arbitration provision]. Apart from that, the [HOA] fails to identify any potential construction-related claims Pinnacle might assert against it that would not be subject to arbitration. Accordingly, there appears no support for the [HOA's] claims of unfairness and absence of mutuality." (*Id.* at pp. 248-249.)

In short, by distinguishing its facts from those in *Armendariz*, the *Pinnacle* court both rejected the defense in the case before it and also implicitly held that the *Armendariz* rule of bilaterality is still good law in California. As we have already observed, the arbitration provision at issue here qualifies under *Armendariz* because it applied to all claims plaintiffs might have that arose out of their contractual relationship with Home Defender.[11]

In *Sonic II*, *supra*, 57 Cal.4th 1109, our Supreme Court reversed its previous decision in *Sonic I*, *supra*, 51 Cal.4th 659, which held that even though an employer could require its employees to arbitrate wage disputes, it was against public policy for those arbitration provisions to require the employee's waiver of his right to a "Berman hearing," a statutory dispute resolution procedure. On remand from the United States Supreme Court with directions to reconsider *Sonic I* in light of *Concepcion*, the *Sonic II* court held that its blanket prohibition against Berman waivers violated the principles set

---

[11]    We find it significant that neither Justice Baxter's majority opinion nor the concurring opinions of Justice Werdegar or Justice Liu, nor the dissenting opinion of Justice Kennard even mentioned *Concepcion*, thus suggesting that none of the justices believed that *Concepcion*, a class action arbitration case, had any precedential effect on the defense of unconscionability.

forth in *Concepcion*. However, the court also held that the waiver could be invalidated under unconscionability principles if the arbitration provision did not provide a dispute resolution mechanism that offered benefits and protections roughly comparable to those found in Berman hearings, and remanded the matter to the trial court so that issue could be developed and adjudicated. (*Sonic II*, *supra*, at pp. 1124-1125, 1147-1148.)[12]

As part of its analysis, the *Sonic II* court made several pertinent observations concerning the continued viability of the unconscionability defense after *Concepcion*. It began by noting that even after *Concepcion*, unconscionability remained a valid defense to a petition to compel arbitration so long as its application did not interfere with the fundamental attributes of arbitration. (*Sonic II*, *supra*, 57 Cal.4th at pp. 1142, 1169-1170.) It described the doctrine in terms of bargains that were unreasonably one-sided (*id.* at p. 1143), referred to *Armendariz* as the "seminal California case" concerning unconscionability in the context of adhesive arbitration agreements (*id.* at p. 1159), and cited *Stirlen*, *supra*, 51 Cal.App.4th at page 1532, which *Armendariz* relied on, for the rule that the unconscionability doctrine seeks to protect against contract terms that are overly harsh. (*Sonic II*, at p. 1145.) The court also cited *Armendariz* for the proposition that the FAA does not preempt general unconscionability principles merely because they are applied in the specific context of arbitration. (*Id.* at p. 1169, citing *Armendariz*, *supra*, 24 Cal.4th at p. 119.)

When *Pinnacle* and *Sonic II* are read together, they show that the California Supreme Court still applies the *Armendariz* bilaterality rule when determining whether to invalidate an arbitration provision on the ground of unconscionability.

This makes sense in light of the issues actually decided in *Concepcion*. As noted, *Discover Bank* announced a per se rule of unconscionability as to class action waivers in consumer adhesion contracts where it was alleged the seller had cheated many consumers out of small sums of money. *Concepcion* held that the *Discover Bank* rule was inimical to arbitration, and was therefore inconsistent with the FAA, because it required parties to

---

**12**      As noted in our introduction, the United States Supreme Court denied a petition for writ of certiorari in *Sonic II*.

an arbitration agreement to arbitrate class claims even when the agreement specifically excluded such claims. That factual setting is not analogous to the issue raised here. If anything, the rule of bilaterality as we apply it here promotes arbitration because its chief complaint is that the party with superior bargaining strength has excluded its own claims from the arbitration process. (See *Noohi v. Toll Bros.*, *supra*, 708 F.3d at pp. 612-613.)[13]

In short, *Concepcion*, a class action case, did not discuss the modicum of bilaterality standard adopted by *Armendariz*, an unconscionability not a class action case, and *Concepcion* did not overrule *Armendariz*. We are therefore bound to follow our Supreme Court and apply *Armendariz* here. (*Samaniego*, *supra*, 205 Cal.App.4th at p. 1141; see, *Truly Nolen*, *supra*, 208 Cal.App.4th at p. 507.) Accordingly, we conclude that *Concepcion* does not apply to invalidate *Armendariz*'s modicum of bilaterality rule, at least in this context.[14]

---

[13]    The presence of the class waiver plays no part in our analysis, which is instead based on the generally applicable contract defense of unconscionability in light of the very one-sided nature of the arbitration provision. We also note that plaintiffs do not challenge the trial court's application of *Stolt-Nielsen*, *supra*, 559 U.S. 662, and have effectively conceded that if the arbitration provision is enforceable then class wide dispute resolution is not available.

[14]    The California Supreme Court has granted review of numerous Court of Appeal decisions that have tackled several issues left by *Concepcion's* wake, including some which have both found and rejected unconscionability in this context. The following is a list of all *Concepcion*-related cases currently before our Supreme Court. (*Vargas v. Sai Monrovia B*, *Inc.* (2013) 216 Cal.App.4th 1269 [157 Cal.Rptr.3d 742], review granted Aug. 21, 2013, S212033; *Brown v. Superior Court* (2013) 216 Cal.App.4th 1302 [157 Cal.Rptr.3d 779], review granted Sep. 11, 2013, S211962; *Vasquez v. Greene Motors*, *Inc.* (2013) 214 Cal.App.4th 1172 [154 Cal.Rptr.3d 778], review granted June 26, 2013, S210439; *Compton v. Superior Court* (2013) 214 Cal.App.4th 873 [154 Cal.Rptr.3d 413], review granted June 12, 2013, S210261; *Natalini v. Import Motors*, *Inc.* (2013) 213 Cal.App.4th 587 [153 Cal.Rptr.3d 224], review granted May 1, 2013, S209324; *Flores v. West Covina Auto Group* (2013) 212 Cal.App.4th 895 [151 Cal.Rptr.3d 481], review granted April 10, 2013, S208716; *Franco v. Arakelian Enterprises*, *Inc.* (2013) 211 Cal.App.4th 314 [149 Cal.Rptr.3d 530], review granted Feb. 13, 2013, S207760; *Goodridge v. KDF Automotive Group*, *Inc.* (2012) 209 Cal.App.4th 325 [147 Cal.Rptr.3d 16], review granted Dec. 19, 2012, S206153; *Reyes v. Liberman Broadcasting*, *Inc.* (2012) 208 Cal.App.4th 1537 [146 Cal.Rptr.3d

5.     *The Agreement Is Procedurally Unconscionable*

Determining whether an arbitration provision was the product of procedural unconscionability turns on two factors:  oppression and surprise.  Oppression arises from an inequality of bargaining power that results in no real negotiations and an absence of meaningful choice.  Surprise involves the extent to which the terms are hidden in a lengthy printed form.  (*Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165 (*Crippen*).)  Ultimately the issue turns on evidence concerning the circumstances surrounding the execution of the agreement, because procedural unconscionability focuses on the manner in which the disputed clause is presented to the weaker party.  If the weaker party is effectively told to "take it or leave it" without the opportunity for meaningful negotiation, an element of procedural unconscionability is present.  (*Ibid.*)

---

616], review granted Dec. 12, 2012, S205907; *Caron v. Mercedes-Benz Financial Services USA*, *LLC* (2012) 208 Cal.App.4th 7 [145 Cal.Rptr.3d 296], review granted Oct. 24, 2012, S205263; and *Iskanian v. CLS Transportation Los Angeles*, *LLC* (2012) 206 Cal.App.4th 949 [142 Cal.Rptr.3d 372], review granted Sept. 19, 2012, S204032.) Our colleagues in the Fourth District recently applied *Sonic II* and *Armendariz* when deciding that a provision in an arbitration clause that granted the arbitrator the right to determine whether the clause was enforceable was not unconscionable. (*Tiri v. Lucky Chances*, *Inc.* 226 Cal.App.4th 231.) Although the *Tiri* court held that the provision was not substantively unconscionable, it cited both *Sonic II* and *Armendariz* for the proposition that under both federal and California law arbitration provisions may be voided if they are unconscionable. (*Id.* at p. 627.) The *Tiri* court also cited both decisions for the rule that unconscionability exists when an arbitration provision is unreasonably favorable to the other party (*id.* at p. 630), or is overly harsh and one-sided. (*Id.* at p. 331.)

Recently, a different panel of this court relied on *Armendariz* in concluding that the arbitration provision in question was substantially unconscionable because it was one sided as to choice of the arbitral or court forum. "The arbitration agreement lacks mutuality not just in available forums, but in a few other ways, and in none of these cases is there a justification proffered for the one-sidedness." (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74.)

24

Plaintiffs contend there was procedural unconscionability because: (1) Viveros violated Civil Code section 1632, which required her to provide a Spanish language version of the contract after she presented the terms in Spanish; (2) the trial court's reliance on *Brown*, *supra*, 168 Cal.App.4th 938 to determine that plaintiffs were bound by the contract even if they did not read it or understand it was misplaced because Viveros owed them a fiduciary duty to properly explain all the contract terms; (3) the Business and Professions Code rules mentioned in the arbitration provision were not attached to the contract; and (4) the contract was adhesive because it was on a pre-printed form and was presented on a take it or leave it basis with no meaningful ability to negotiate.

Defendants contend there was no procedural unconscionability because: (1) Civil Code section 1632 does not apply because it provides only rescission as a remedy, which plaintiffs do not seek; (2) *Brown* applied because there was no evidence that Viveros acted as a fiduciary; (3) the failure to supply a copy of any arbitration rules was irrelevant because as it turned out the Business and Professions Code reference had no effective meaning, and as a result there were no such rules; (4) the arbitration provision was conspicuous and the contract was brief; (5) there was no evidence that the contract was offered on a take it or leave it basis or that plaintiffs were unable to negotiate or were otherwise subject to oppressive tactics; and (6) the contract was not adhesive.

We begin with *Brown*, which was crucial to the trial court's finding that there was insufficient procedural unconscionability to justify vitiating the arbitration provision. The plaintiff in *Brown* sued his bank for breach of fiduciary duty and unjust enrichment. The bank's petition to compel arbitration was denied by the trial court because, without reaching the issue of substantive unconscionability, it determined the provision was procedurally unconscionable. Although the trial court found the bank was plaintiff's fiduciary, it did not reach the issue of whether the entire agreement should have been voided under the doctrine of fraud in the execution based on allegations that the bank did not fully explain the agreement.

25

The *Brown* court reversed and in its opinion found no substantive unconscionability as a matter of law. As a result, the court did not reach the procedural unconscionability issue. (*Brown*, *supra*, 168 Cal.App.4th at pp. 956-958.) As *Brown* also expressly states, the case "is not really about arbitration" but about the consequences flowing from a fraud in the execution and breach of fiduciary duty. (*Id.* at p. 945.) The *Brown* court held that the trial court erred by not reaching the fraud in the execution issue and remanded so the trial court could do so. (*Id.* at p. 959.)

*Brown* discussed the doctrine of fraud in the execution generally, noting that it is applicable when the plaintiff was deceived as to the very nature of the agreement being signed and did not know what he was signing. If so, the entire agreement is void. (*Brown*, *supra*, 168 Cal.App.4th at p. 958.) However, the plaintiff must show reasonable reliance on the defendant's misrepresentation, and the defense ordinarily fails if the plaintiff had an opportunity to discover the true contract terms but simply failed to read the agreement. (*Ibid.*) An exception to this rule applies when the other party was plaintiff's fiduciary. In such cases, the defendant has a duty to fully and accurately describe the contract terms. (*Ibid.*)

We conclude that the trial court erred when it relied on *Brown* for its finding that plaintiffs' failure to read or inability to understand the contract did not make it procedurally unconscionable. That portion of *Brown* went to the fraud in the execution doctrine, not to procedural unconscionability, an issue that the *Brown* court expressly declined to reach. (*Brown*, *supra*, 168 Cal.App.4th at pp. 944-945.) The rule that failure to read a contract may not avoid its enforcement applies only in the absence of unconscionable overreaching. In fact, the failure to read the contract helps establish actual surprise. (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1290-1291; see *Higgins*, *supra*, 140 Cal.App.4th at p. 1251 [procedural unconscionability may exist *even if* plaintiff reads an agreement; a contrary rule would seriously undermine the unconscionability defense].)

Of course, even a finding that a party's failure to read the document may have contributed to procedural unconscionability does not end the inquiry. In some cases the

26

level of substantive unconscionability may be so low that the modicum of procedural unconscionability is insufficient to render the contract unenforceable. We next consider whether the arbitration provision was procedurally unconscionable in light of the circumstances surrounding the execution of the parties' agreement.**15**

We agree that the arbitration provision was not concealed in the three-page written contract. The agreement is short and the arbitration provision is as conspicuous as any other provision. However, plaintiffs were presented with other documents at the same time, including: (1) a one-page description of Home Defender's services; (2) a one-page list of "DO's & DON'T'S"; (3) a two-page document granting power of attorney to defendants; (4) a two-page authorization to release information; (5) a one-page deposit receipt with instructions on when plaintiffs' fees could be released to defendants; (6) a combined eight pages of small print, densely worded California Association of Realtors forms concerning agency disclosures and listing agreements for plaintiffs' homes; and (7) the Spanish language form stating that plaintiffs had read all the other forms.

In examining the circumstances surrounding plaintiffs' execution of these documents, we begin with some of the evidence defendants submitted in support of their petition to compel arbitration: the Home Defender's files, which included "hardship" letters written by plaintiffs to support their need for mortgage foreclosure consulting services and a home loan modification. Distilled, the plaintiffs detailed a variety of unfortunate circumstances, ranging from business failure, job loss, wage and hour cutbacks, divorce, and damage to homes due to flooding or wildfires, that placed them in jeopardy of foreclosure and necessitated a mortgage modification to save their homes.

Next, according to plaintiffs' uncontested declarations, Viveros told them that Home Defender could get their mortgage payments reduced. After explaining in Spanish how the program worked, Viveros presented them with many documents, claimed that the documents stated in English what she had just told them in Spanish, and told them to sign. We agree with the trial court that these statements are a bit generalized, but when

---

**15** We agree with defendants that plaintiffs have failed to articulate either a legal or factual basis for their contention that Viveros was their fiduciary.

27

read in context with the circumstances shown by the plaintiffs' hardship letters, it is apparent that plaintiffs saw Home Defender as a way out of their serious financial difficulties. The clear import of their declarations is that when Viveros told them to sign the documents after claiming they simply repeated what she had told them, she was effectively telling them there was no need to read them.

Because defendants never submitted declarations or other evidence contradicting plaintiffs' declarations, we accept plaintiffs' version of events. (*Wherry v. Award*, *Inc.* (2011) 192 Cal.App.4th 1242, 1247.) The trial court did as well, assuming for purposes of its analysis that the plaintiffs either did not read the contract or did not understand English, while concluding under *Brown* that they were nevertheless bound by the contracts. However, as our analysis of *Brown*, *supra*, 168 Cal.App.4th 938, makes clear, that does not preclude a finding of procedural unconscionability.

Defendants also contend that plaintiffs could have obtained mortgage foreclosure consulting services elsewhere. However, they provide no evidence to support that claim, which also overlooks the fact that in ordinary consumer transactions, where consumers have little incentive to seek out alternatives, the mere theoretical opportunity to have gone elsewhere will not preclude a finding of unconscionability. (*Gatton v. T-Mobile USA*, *Inc.* (2007) 152 Cal.App.4th 571, 585.) We believe this rule applies here because Viveros was not entirely a stranger to plaintiffs. Flores had used her as a real estate agent in a previous transaction. He felt comfortable with Viveros because she spoke Spanish and all of their communications were carried out in that language. Viveros contacted Flores about a home loan modification, and Flores referred Campos, Sabia, and Cruz to her. It appears that this referral was the reason why plaintiffs chose Viveros and the other defendants, making it far less likely they would have looked elsewhere for the same services.[16]

---

**16** Defendants ask us to judicially notice "the plethora of loan modification services offered to the public since the downfall of the real estate market in 2008." Apart from the fact that this request is procedurally defective, (Cal. Rules of Court, rule 8.252),

28

We next consider Viveros's failure to provide a version of the agreements in Spanish, in violation of Civil Code section 1632. Even though it appears that Viveros violated Civil Code section 1632, the statute itself is inapplicable because plaintiffs do not seek rescission. And, as defendants point out, plaintiffs' hardship letters show a certain proficiency in the English language. Further, because plaintiffs, in reliance on Viveros, did not read the documents, her failure to provide a Spanish translation of the documents arguably had little effect on the outcome. However, the undisputed fact that Viveros explained the agreements in Spanish and had plaintiffs sign a Spanish language acknowledgment that they had read the forms shows that plaintiffs were more comfortable discussing complex concepts and contractual arrangements in their native language. Viewed in that light, even though plaintiffs do not seek relief under Civil Code section 1632, Viveros's violation of that provision could be viewed as part of a scheme to conceal from plaintiffs all the essential terms of the documents they were signing, including the arbitration provision, thereby contributing to procedural unconscionability. (See *Carmona v. Lincoln Millennium Car Wash, Inc.*, *supra*, 226 Cal.App.4th 74.)

Summing up, the evidence shows that plaintiffs were presented a stack of English language documents and effectively told not to read them because they reflected what Viveros had explained to them in Spanish. The form contract, presented under these circumstances, was adhesive. Given plaintiffs' economic circumstances and their preference for dealing with Viveros based on either past experience or Flores's referral, we conclude there was sufficient oppression and surprise to create more than a minimum of procedural unconscionability.[17]

Defendants rely on *Crippen*, *supra*, 124 Cal.App.4th at pages 1165-1166 and *Trend Homes*, *Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 958, disapproved on

---

defendants have made no factual or legal showing to support such a request, which we therefore deny.

[17] We agree with defendants that failure to attach to the agreement any rules of arbitration did not contribute to procedural unconscionability under the circumstances of this case.

29

other grounds in *Tarrant Bell Property*, *LLC v. Superior Court* (2011) 51 Cal.4th 538, 545, footnote 5, to support their contention that there was no procedural unconscionability. Neither is applicable here. In *Crippen*, the court concluded that there was no evidence of procedural unconscionability. Although the form contract was an adhesion contract, that alone did not make the contract procedurally unconscionable, and the plaintiffs had not offered evidence concerning the negotiation and execution of the disputed agreement. In *Trend Homes*, there was no evidence that the plaintiff asked to negotiate the contract. In contrast, the record in this case contains circumstances surrounding the formation of the contracts and that evidence shows procedural unconscionability.

6.     *The Unconscionable Terms Cannot Be Severed*

We may either refuse to enforce an arbitration provision if it is permeated by unconscionability, or sever or restrict the offending portions. (Civ. Code, § 1670.5, subd. (a).) Plaintiffs contend the arbitration provision is not severable. Defendants do not contest that assertion on appeal and we agree with it.

The arbitration provision states that "[i]f a dispute arises between Home Defender Center and Client regarding Home Defender Center's actions under this agreement and Client files suit in any court other than small claims court, Home Defender Center will have the right to stay that suit by timely electing to arbitrate . . . ." As discussed earlier, this provision is substantively unconscionable because it effectively requires plaintiffs to arbitrate their claims while leaving Home Defender free to sue in court for any claims it might have. There is no language in this provision that could be severed to make it bilateral. Instead, it would have to be rewritten to state that either party may require the other to arbitrate its claims. However, our power to sever does not include the power to reform the contract by augmenting it with additional terms. (*Flores v. Transamerica HomeFirst*, *Inc.*, *supra*, 93 Cal.App.4th at p. 857.) Therefore severance is not an option.

7.    *The Combined Procedural and Substantive Unconscionability Is Sufficient to Preclude Enforcement of the Arbitration Provision*

Our final task is to evaluate where on the sliding scale the degree of both procedural and substantive unconscionability sit.  In regard to substantive unconscionability, there are certainly worse examples, where an arbitration provision not only applies to one side, but shortens the limitations period, limits available remedies, and imposes unfair procedures and costs.  (See *Samaniego*, *supra*, 205 Cal.App.4th at pp. 1147-1148; *Stirlen*, *supra*, 51 Cal.App.4th at pp. 1533-1534.)  However, the provision in the Home Defender contract is unfairly one-sided in two significant respects:  by allowing only Home Defender unfettered access to the courts for any claims it might have against its clients, and by limiting plaintiffs' access to the courts to only small claims actions, thus cutting off civil actions involving substantial damage claims.  We believe this places it somewhere beyond the middle of the sliding scale.

The level of procedural unconscionability sits somewhere below the middle of that scale, but not toward the bottom.  Plaintiffs were effectively steered away from examining the contracts and other documents and were not given Spanish language versions even though the negotiations were conducted in Spanish.  Plaintiffs were also in economic distress at the time.  The combined effect of these two forms of unconscionability is sufficient to tip the scales to the point where the arbitration provision should not be enforced.

## DISPOSITION

The order compelling arbitration is reversed and the matter is remanded to the superior court for further proceedings.  Plaintiffs shall recover their costs on appeal.

                                                    RUBIN, J.

I CONCUR:


            BIGELOW, P. J.

31

**Sabia et al. v. Orange County Metro Realty, Inc., et al.**

**B243141**

**Grimes, J., Dissenting.**

Respectfully, I dissent, not because of a conviction that the majority opinion misapprehends how our Supreme Court would construe *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740] (*Concepcion*) as it applies in this case, but because I am unable to set aside my doubts. I would have preferred to stay this case to obtain the benefit of the opinions in cases now pending decision in our Supreme Court that, it appears, will shed light on at least some of the unresolved issues concerning the enforceability of arbitration agreements governed by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) that are claimed to be unconscionable. For example, *Sanchez v. Valencia Holding Co.*, (review granted Mar. 21, 2012, S199119) may decide the following issue: Does the FAA (§ 2), as interpreted in Concepcion preempt state law rules invalidating mandatory arbitration provisions in a consumer contract as procedurally and substantively unconscionable?

Recently, the Supreme Court held in *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*) that unconscionability remains a valid defense to a petition to compel arbitration after Concepcion. (*Sonic II, supra,* at pp. 1142-1143, 1145.) The Supreme Court is, as I write, continuing to develop the law in this area; and with so many uncertainties, I cannot agree with my colleagues that the arbitration agreement here is unenforceable under federal law construing the FAA. I have no desire or intent to violate *Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450. And, I do not believe this dissenting opinion does so because, in my view, this case presents a question of first impression to be determined by the application of federal law. (*People v. Johnson* (2012) 53 Cal.4th 519, 528 ["Lower courts may decide questions of first impression, including the effect that subsequent events, such as a United States Supreme Court decision, have on decisions from a higher court, including this one. . . . If a higher court believes the lower court decided a question erroneously, it can take appropriate action. But a lower court does not violate [*Auto Equity*] merely by deciding questions of first impression."].)

The arbitration agreement here is in a contract between the plaintiff mortgage homeowners and the real estate business defendants they retained to provide services to help them obtain a loan modification, loan restructuring, short-sale authorization, or deed in lieu of foreclosure authorization. The majority finds this arbitration agreement is substantively unconscionable because it compels only the plaintiff homeowners to arbitrate their disputes with the defendants, and did not also expressly compel the defendants to arbitrate their disputes with the homeowners. The majority relies largely on *Armendariz v. Foundation Health Psychcare Services* (2000) 24 Cal.4th 83 (*Armendariz*) which carved out a class of claims, those involving an employee's unwaivable statutory rights, and applied a special rule to mandatory agreements to arbitrate those claims, requiring them to meet its minimum requirements in order to be enforceable. The majority focuses on language in *Armendariz* to the effect that the doctrine of unconscionability prevents enforcement of one-sided arbitration agreements imposed by an employer on an employee. As the majority notes, *Armendariz* rejected the argument that requiring mutuality of arbitration disfavored arbitration agreements in contravention of the FAA, reasoning in part that an arbitration agreement compelling one but not both parties to arbitrate disputes reflects a mistrust of arbitration that has been repudiated by the high court. The majority reasons that a rule prohibiting one-sided arbitration agreements promotes arbitration by requiring both parties to arbitrate their disputes.

Assuming the language in Armendariz concerning one-sided arbitration agreements was part of the holding in that case, and not dicta, nonetheless, *Armendariz* was decided in 2000, and the Supreme Court did not have the benefit of the high court's decision in *Concepcion*, decided over a decade later. The Supreme Court may have decided *Armendariz* differently if *Concepcion* had been the law in 2000, in part because *Concepcion* indicates the way to promote arbitration is to enforce arbitration agreements on their terms, not to refuse to enforce them under principles that discriminate against arbitration agreements and which are not neutral principles applicable to contracts generally.

2

Moreover, it is by no means clear that the Supreme Court would find a one-sided arbitration agreement in the context of this contract to be substantively unconscionable. *Armendariz*, *Sonic II*, and many of the lower court opinions cited in *Sonic II* (see, e.g., 57 Cal.4th at p. 1151) concern mandatory employment arbitration agreements. This case does not involve an employment agreement or employee rights but a home loan restructuring agreement. I do not know how the Supreme Court may apply its precedent developed in the employment context to contracts such as the one at issue here.

*Sonic II* says the doctrine of unconscionability is "concerned with whether the agreement is unreasonably favorable to one party, considering in context 'its commercial setting, purpose, and effect.' (Civ. Code, § 1670.5, subd. (b).)" (*Sonic II*, *supra*, 57 Cal.4th at p. 1148.) The opinion cites the various formulations in the case law to describe the test for substantive unconscionability (an issue now before the Supreme Court in *Sanchez v. Valencia Holding Co.*, *supra*) and tells us that all of the "formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation]. These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' [Citation.]" (*Sonic II*, at p. 1145.) Later in the opinion, *Sonic II* gives an example of a one-sided agreement that is substantively unconscionable: "adhesive contracts or terms that are unreasonably one-sided in favor of the drafting party, such as terms that effectively insulate the drafting party from liability." (*Id.* at p. 1171.)

I do not find in the record any basis on which to conclude as a matter of law that this arbitration agreement falls within any of the categories of substantively unconscionable contracts described in Sonic II. The agreement in this case by no means insulates defendants from liability. It is not clear to me that either *Armendariz* or *Sonic II*

3

establishes that a one-sided arbitration clause in a home loan restructuring contract is per se substantively unconscionable.  It would be so if it were the law that it is unfair or unreasonable to substitute the arbitral forum for a court for one party but not the other.  But *Sonic II* says "[b]oth California and federal law treat the substitution of arbitration for litigation as the mere replacement of one dispute resolution forum for another, resulting in no inherent disadvantage."  (*Sonic II*, *supra*, 57 Cal.4th at p. 1152.)

       *Concepcion* determined "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable' " (131 S.Ct. at p. 1747), nor may it enforce "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives", including the objective of " 'ensur[ing] that private arbitration agreements are enforced according to their terms.' [Citations.]" (*Id.* at p. 1748.)  Before *Concepcion*, the high court explained in *Perry v. Thomas* (1987) 482 U.S. 483 (*Perry*) that the FAA preempts a state unconscionability rule that discriminates against arbitration.  "A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the FAA's savings clause].  [Citations.]  A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." (*Perry*, at p. 492, fn. 9.)

       Refusing to enforce an arbitration agreement because it does not require both parties to arbitrate their disputes appears contrary to the decisions in *Concepcion* and *Perry*, because there is no general principle of California contract law that promises must be mutual in order to be enforceable.  California law does not require mutuality of every term and provision in a contract, so long as each party has made binding obligations in consideration for their respective promises.  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 212, p. 247 ["the promise of one party is consideration for that of another"]; *id.*, § 225, pp. 260-261 ["doctrine of mutuality of obligation requires that the promises on each side be *binding obligations* in order to be consideration for each other"]; see also 2 Corbin on Contracts (rev. ed. 1995) § 6.1, p. 197 ["[S]ymmetry is not

4

justice and the so-called requirement of mutuality of obligation is now widely discredited."]; 25 Williston on Contracts (4th ed. 2002) § 67:42, p. 332 ["mutuality of obligation is simply a prerequisite to the formation of a valid bilateral contract" -- "mutuality of obligation in bilateral contracts is but another way of stating that consideration is essential"].)  Under general principles of California contract law, it is not unconscionable to include terms in a contract that benefit one party but not the other, so long as there is consideration for the contract.  (Cf. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012) 55 Cal.4th 223, 246 ["A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.]"].)

Plaintiffs acknowledge they entered binding contracts with defendants:  one of their claims is for breach of contract.  Plaintiffs attack only the arbitration clause as lacking mutuality of obligation.  Before *Armendariz*, the Supreme Court had not held California law requires that both parties to a contract be subject to arbitration in order for their arbitration agreement to be enforceable.  The reasoning and analysis of *Armendariz*, *supra*, 24 Cal.4th at pages 114 through 121, and the decisions by the intermediate appellate courts holding that one-sided arbitration agreements are unconscionable, such as *Stirlen v. Supercuts* (1997) 51 Cal.App.4th 1519, rest on special judge-made rules that apply only to arbitration agreements, and not on general principles of contract law.  Because of this, it appears that a rule requiring mutuality of arbitration agreements would run contrary to the FAA as interpreted by *Concepcion* because it discriminates against arbitration, requiring arbitration clauses be mutual but not imposing that requirement on other contract provisions.  (*Mortensen v. Bresnan Communications, LLC* (9th Cir. 2013) 722 F.3d 1151, 1159-1161 [FAA preempts Montana reasonable expectations/fundamental rights rule because it "disproportionally applies to arbitration agreements, invalidating them at a higher rate than other contract provisions" reasoning in part, "We take *Concepcion* to mean what its plain language says:  Any general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA."]; see also *Allied-Bruce Terminix Cos. v. Dobson*

(1995) 513 U.S. 265, 281 ["What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [FAA's] language and Congress' intent."].)

In summary, I cannot concur, at this time, in the majority's conclusion that the arbitration agreement is unenforceable.


GRIMES, J.