[No. S178320. Feb. 28, 2011.]

In re BAYCOL CASES I and II.

752

COUNSEL

Shaun P. Martin; Green Welling, Robert S. Green, Jenelle Welling, Charles D. Marshall and Brian S. Umpierre for Plaintiff and Appellant.

Sidley Austin, Catherine Valerio Barrad, Steven A. Ellis and Brendan P. Sheehey for Defendant and Respondent.

OPINION

**WERDEGAR, J.**—The right to appeal in California is generally governed by the "one final judgment" rule, under which most interlocutory orders are not appealable. (See Code Civ. Proc., § 904.1.)[1] In *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732] (*Daar*), however, concerned that orders dismissing all class action claims might in some instances escape review, we adopted a "death knell" doctrine that allowed a party to appeal such orders immediately. Here, we address uncertainty over the scope of the death knell doctrine: does it extend to orders that simultaneously terminate individual claims as well, or does it apply only where, as was the case in *Daar* itself, individual claims survive?

We conclude the preservation of individual claims is an essential prerequisite to application of the death knell doctrine: the doctrine renders appealable only those orders that effectively terminate class claims but permit individual claims to continue. When instead an order terminates both class and individual claims, there is no need to apply any special exception to the usual one final judgment rule to ensure appellate review of class claims. Instead, routine application of that rule suffices to ensure review while also avoiding a multiplicity of appeals. Because the Court of Appeal misapplied these principles in dismissing an appeal from the sustaining of a demurrer to class claims here, we reverse.

### Factual and Procedural Background

In 1997, defendant Bayer Corporation (Bayer) gained United States Food and Drug Administration approval for, and shortly thereafter began marketing, the drug Baycol. (*In re Baycol Products Litigation* (D.Minn. 2003)

---

[1] All further unlabeled statutory references are to the Code of Civil Procedure.

218 F.R.D. 197, 201.) Baycol, generically known as cerivastatin sodium, is part of a class of cholesterol lowering drugs commonly referred to as statins. (*Ibid.*) In 2001, Bayer withdrew Baycol from the market after concerns arose about links between the use of Baycol and several acute, and sometimes fatal, muscle tissue diseases. (*Ibid.*)

Following Bayer's withdrawal of Baycol from the market, thousands of plaintiffs filed suit against Bayer. (*In re Baycol Products Litigation, supra,* 218 F.R.D. at p. 201.) Plaintiff Douglas Shaw filed this case as a class action, alleging claims for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and for unjust enrichment. The complaint alleged Bayer had engaged in false and misleading advertising regarding Baycol.

In 2007, after consolidation with other actions in a Judicial Council coordination proceeding, Shaw filed a first amended complaint, adding to the UCL and unjust enrichment claims a claim under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). The amended complaint sought to certify a class of "[a]ll persons or entities who purchased or paid for the drug *Baycol* between February 18, 1998 and August 8, 2001 . . . , to be used by California Consumers, and not for resale."

Bayer demurred to both the class allegations and each substantive claim. On April 27, 2007, the trial court sustained the demurrer in its entirety without leave to amend. It thereafter denied Shaw's motion for reconsideration on both class and individual claims and entered a judgment of dismissal. Bayer served a notice of entry of judgment on October 29, 2007, and Shaw filed his notice of appeal on December 20, 2007.

The Court of Appeal reversed dismissal of Shaw's individual UCL claim, concluding he should have been granted leave to amend. However, it declined to consider on the merits the appeal of the class claims dismissal and instead dismissed that portion of the appeal. Relying on cases that have held death knell orders terminating class claims are immediately appealable, the Court of Appeal reasoned that, upon entry of the April 27, 2007, order sustaining Bayer's demurrer, the class claims dismissal, unlike the individual claims dismissal, was appealable. Consequently, the December 20, 2007, notice of appeal was, as to the class claims, untimely. (See Cal. Rules of Court, rules 8.104, 8.108(e).)

We granted review to resolve uncertainty over the timing of appeals in cases involving class claims.

### DISCUSSION

■ Under the one final judgment rule, " 'an appeal may be taken only from the final judgment in an entire action.' " (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 921 [167 Cal.Rptr. 831, 616 P.2d 813], quoting *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 153 [133 Cal.Rptr. 10, 554 P.2d 330].) " 'The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43]; see also *Flanagan v. United States* (1984) 465 U.S. 259, 264 [79 L.Ed.2d 288, 104 S.Ct. 1051] [the one final judgment rule "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals"]; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741, fn. 9 [29 Cal.Rptr.2d 804, 872 P.2d 143] [the rule ensures a complete record for the reviewing court, allows it to better craft its directions to the trial court, and reduces trial court uncertainty and delay].)

The one final judgment rule is "a fundamental principle of appellate practice" (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21 [23 Cal.Rptr.3d 490, 104 P.3d 844]), recognized and enforced in this state since the 19th century (see, e.g., *Ashley v. Olmstead* (1880) 54 Cal. 616, 618; *Agard v. Valencia* (1870) 39 Cal. 292, 297; *Hibberd v. Smith* (1870) 39 Cal. 145, 146).[2] The Legislature first codified the rule in the Practice Act of 1850 (Stats. 1850, ch. 142, § 258, p. 451; see *Howe v. Key System Transit Co.* (1926) 198 Cal. 525, 531 [246 P. 39]), later incorporated it as part of the original Code of Civil Procedure (see former § 963, enacted 1872), and has retained it in the Code of Civil Procedure to this day (see § 904.1; *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 962–963 [231 Cal.Rptr. 241] [§ 904.1 codifies the common law one final judgment rule]).[3]

---

[2] In the United States, the one final judgment rule was adopted as part of the Judiciary Act of 1789 (1 Stat. 73, ch. 20, §§ 21, 22, 25), and its true origins date to "the dim and remote history of the appellate procedure of the English common law." (Crick, *The Final Judgment as a Basis for Appeal* (1932) 41 Yale L.J. 539, 544; see also *id.* at pp. 541–548 [discussing common law roots in depth]; *McLish v. Roff* (1891) 141 U.S. 661, 665 [35 L.Ed. 893, 12 S.Ct. 118] [the adoption of the one final judgment rule in the Judiciary Act of 1789 was "declaratory of a well settled and ancient rule of English practice"].)

[3] Section 904.1 directs that an appeal may be taken "[f]rom a judgment" (§ 904.1, subd. (a)(1)) and in its remaining subdivisions lists various specific additional appealable orders that stand as exceptions to the general rule. None are relevant here.

Given the one final judgment rule's deep common law and statutory roots and the substantial policy considerations underlying it, we are reluctant to depart from its principles and endorse broad exceptions that might entail multiple appeals absent compelling justification. "[E]very exception to the final judgment rule not only forges another weapon for the obstructive litigant but also requires a genuinely aggrieved party to choose between immediate appeal and the permanent loss of possibly meritorious objections." (*Kinoshita v. Horio, supra*, 186 Cal.App.3d at p. 967.) Accordingly, "exceptions to the one final judgment rule should not be allowed unless clearly mandated." (*Ibid.*)

We found compelling justifications for one such exception in *Daar, supra,* 67 Cal.2d 695, embracing what is known in this and other jurisdictions as the "death knell" doctrine.[4] In *Daar*, the plaintiff filed a putative class action. The trial court sustained a demurrer, concluding the plaintiff could neither maintain a class action nor satisfy the jurisdictional minimum amount in controversy for superior court actions, and transferred the action to the municipal court. On appeal, we considered as a threshold issue whether such an order, determining the plaintiff could not maintain his claims as a class action but could seek individual relief, was appealable, and we concluded it was. What mattered was not the form of the order or judgment but its impact. (*Daar*, at pp. 698–699.) Because the order effectively rang the death knell for the class claims, we treated it as in essence a final judgment on those claims, which was appealable immediately. (*Id.* at p. 699; see also *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] [citing *Daar* with approval]; *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23] [same].)

Two procedural circumstances were critical to our decision in *Daar, supra*, 67 Cal.2d 695: first, that the appealed-from order was the practical equivalent of a final judgment for some parties, and second, that in the absence of our treating the order as a de facto final judgment, any appeal likely would be foreclosed. On the first point, the order "virtually demolished the action as a class action" (*id.* at p. 699) and was in " 'legal effect' . . . tantamount to a dismissal of the action as to all members of the class other than plaintiff" (*ibid.*, citation omitted). In cases decided since *Daar*, we and the Courts of Appeal have emphasized that orders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not qualify for immediate appeal under the death knell

---

[4] The name is traceable to *Eisen v. Carlisle & Jacquelin* (2d Cir. 1966) 370 F.2d 119, 121 ("Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed.").

doctrine; only an order that entirely terminates class claims is appealable. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [172 Cal.Rptr. 206, 624 P.2d 256] [an order partially decertifying a class is nonappealable where the decertified portion of the class and the remaining class significantly overlap]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 806–807 & fn. 4 [94 Cal.Rptr. 796, 484 P.2d 964] [an order that terminates some but not all class claims is not an appealable order]; *Shelley v. City of Los Angeles* (1995) 36 Cal.App.4th 692, 695–697 [42 Cal.Rptr.2d 529] [an order partially certifying a class ordinarily is nonappealable]; *General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 251–252 [244 Cal.Rptr. 776] [same].)

Equally important in *Daar* was the circumstance that the order appealed from was essentially a dismissal of everyone "*other* than plaintiff." (*Daar, supra,* 67 Cal.2d at p. 699, italics added.) We emphasized that permitting an appeal was necessary because "[i]f the propriety of [a disposition terminating class claims] could not now be reviewed, it can never be reviewed" (*ibid.*), and we were understandably reluctant to recognize a category of orders effectively immunized by circumstance from appellate review. This risk of immunity from review arose precisely, and only, because the individual claims lived while the class claims died. As the United States Supreme Court has explained, "[t]he 'death knell' doctrine assumes that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment and then seek appellate review of an adverse class determination." (*Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469–470 [57 L.Ed.2d 351, 98 S.Ct. 2454]; see also *General Motors Corp. v. Superior Court, supra,* 199 Cal.App.3d at p. 251; *Eisen v. Carlisle & Jacquelin, supra,* 370 F.2d at p. 120; Howard & Klafter, *Appealability of a Class Action Dismissal: The "Death Knell" Doctrine* (1972) 39 U.Chi. L.Rev. 403, 406.) This concern—that an individual plaintiff may lack incentive to pursue his individual claims to judgment, thereby foreclosing any possible appellate review of class issues—is present in cases such as *Daar,* where individual claims persist but remain unresolved, but is wholly absent in cases where a final judgment resolving all claims will follow as a matter of course without further action by the individual plaintiff. Consistent with this understanding, decisions in other jurisdictions specially permitting appeal of orders terminating class claims routinely rely on the assumption that appeal is warranted because review otherwise would be foreclosed by the persistence of individual claims. (See, e.g., *Levine v. Empire Savings & Loan Assn.* (1976) 192 Colo. 188 [557 P.2d 386, 387]; *Frost v. Mazda Motor of America, Inc.* (2000) 353 N.C. 188 [540 S.E.2d 324, 327–328]; *Rogelstad v. Farmers Union Grain Terminal Assn.* (N.D. 1974) 224 N.W.2d 544, 546–548; *Roemisch v. Mutual of Omaha Ins. Co.* (1974) 39 Ohio St.2d 119 [314 N.E.2d 386, 388–389]; *Bell v. Beneficial Consumer Discount Co.* (1975) 465 Pa. 225 [348 A.2d 734, 736].)

 Thus understood as requiring an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered, the death knell doctrine fits comfortably within the existing statutory framework.[5] In *Daar* itself, we described the class certification denial order as "in legal effect a final judgment" (*Daar, supra,* 67 Cal.2d at p. 699) settling the respective rights of the absent class members vis-à-vis the defendant, and thus within the settled rule that orders amounting to de facto judgments as to some but not all parties could be treated as final judgments and appealed under former section 963. (See, e.g., *McClearen v. Superior Court* (1955) 45 Cal.2d 852, 855 [291 P.2d 449] [an order conclusively determining a lien claimant's rights, but not those of the original parties to the action, is immediately appealable]; *Bowles v. Superior Court* (1955) 44 Cal.2d 574, 582 [283 P.2d 704] ["Although [former] section 963 . . . does not specifically list an order denying a request for leave to file a complaint in intervention [as appealable], such an order has long been held appealable on the theory that the denial is a final determination of the litigation as to the party seeking to intervene."].)

Underlying this original settled rule was the recognition that "to hold the person [whose rights have been finally disposed of] bound to wait until the final judgment against the other party before taking an appeal from the judgment against the first party already rendered is wholly unreasonable and finds no warrant in any provision of the [Code of Civil Procedure]." (*Rocca v. Steinmetz* (1922) 189 Cal. 426, 428 [208 P. 964]; see also *Howe v. Key System Transit Co., supra,* 198 Cal. at pp. 531–533 [notwithstanding the express terms of former § 963, appeal from an order is permitted where it amounts to a final decree disposing of a collateral party's claims, although the principal parties' claims remain unresolved]; *Dollenmayer v. Pryor* (1906) 150 Cal. 1, 3 [87 P. 616] ["So far as the intervener and his rights in that action were concerned, [the order appealed from] was final. We see no good end to be secured by requiring him to await judgment between the other parties after a trial in which he could not participate. It ended the litigation as to him, and he should be allowed an immediate appeal."].) The rule within which *Daar, supra,* 67 Cal.2d 695, was intended to fit thus applied when, and only when, other parties in the litigation had claims still unresolved. Otherwise, there

---

[5] As it must. Though the rules governing appealability have common law roots, they are now creatures of statute. (*Griset v. Fair Political Practices Com., supra,* 25 Cal.4th at p. 696; *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 709 [135 Cal.Rptr. 392, 557 P.2d 976].) While we safely may assume the Legislature, in codifying the one final judgment rule, did not intend to alter materially the rule's existing common law contours, we likewise are not at liberty to modify those contours in ways at odds with the statutory language.

would be no wait to avoid and no need to treat the prejudgment order as itself a de facto judgment. We see no basis for reading *Daar* as dispensing with that limitation and radically expanding the rule it purported to apply.

■ Embracing this understanding of *Daar, supra,* 67 Cal.2d 695, the Court of Appeal in *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547 [78 Cal.Rptr.3d 666] correctly described the death knell doctrine as "a tightly defined and narrow concept." It properly recognized the doctrine's application depended on the contrast between the continuing viability of individual claims and the terminated status of absent class member claims: "[A]n appeal is allowed because the action has in fact and law come to an end, as far as the members of the alleged class are concerned. Since, in theory, the individual plaintiff's action can go forward, the death knell doctrine fits comfortably into the exception to the 'one final judgment' rule that arises when parties have separate and distinct interests; when this is true, there can be a final and appealable judgment for each such party." (*Ibid.*) In the absence of such a difference in claim status, where both class and individual claims have been resolved and a single judgment soon will follow, that exception is inapplicable and no justification for applying the death knell doctrine exists.

■ Here, a single order was entered dismissing both individual and class claims. No divergence between individual and class interests was thereby created. (Cf. *Farwell v. Sunset Mesa Property Owners Assn., Inc., supra,* 163 Cal.App.4th at p. 1547.) No risk arose that the named plaintiff, lacking incentive to pursue his individual claims, might fail to press on until the entry of an appealable final judgment. (Cf. *Coopers & Lybrand v. Livesay, supra,* 437 U.S. at pp. 469–470.) No need was present to treat the original order as immediately appealable, so as to prevent the trial court's class determinations from never being reviewable. (Cf. *Daar, supra,* 67 Cal.2d at p. 699.) The scope of the death knell doctrine is coextensive with its rationale. The doctrine does not apply here.[6]

■ The Court of Appeal below recognized that at least one other Court of Appeal had concluded, as we do, that where an order sustains a demurrer as to both class and individual claims, appeal lies from the subsequent entry of

---

[6] We have previously said, in refusing to parse a single order into separate pieces each triggering its own deadline for appeal: "[A]n absurd situation would result if we were to hold that the portion of the ruling sustaining the demurrers is nonappealable and must be followed by a judgment of dismissal but that the portion of the ruling granting the motions [to dismiss] is final and immediately appealable." (*Lavine v. Jessup* (1957) 48 Cal.2d 611, 615 [311 P.2d 8].) The same rationale applies under these facts, where extension of the death knell doctrine would generate two timelines for appeal from the order in this case—one for the denial of the class claims and another for the denial of the individual claims.

final judgment, not the order. (See *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202 [80 Cal.Rptr.3d 340].) But it treated *Los Altos* as carving out an exception to the death knell doctrine and, concerned about the need for bright lines in establishing rules of appealability, declined to embrace such an exception. Echoing this position, Bayer contends that treating the April 27, 2007, order as nonappealable would carve out an unwarranted exception to *Daar*'s death knell doctrine.

We readily agree that bright lines are essential in this area, to avoid both inadvertent forfeiture of the right to appeal and excessive protective appeals by parties afraid they might suffer such a forfeiture.[7] Properly understood, however, the principle that appeal lies only from the final judgment when an order terminates *both* class and individual claims is not an ill-defined, ad hoc exception to the death knell doctrine, but an appropriate recognition of the doctrine's limits. As *Daar* itself expressed, and as we have explained above, the doctrine comes into play for class claims only when an order "is tantamount to a dismissal of the action as to all members of the class *other than plaintiff.*" (*Daar, supra*, 67 Cal.2d at p. 699, italics added.) The rule that the death knell doctrine applies to render an order foreclosing class claims appealable when, and only when, individual claims survive is, we trust, sufficiently bright to guide future courts and litigants.

Bayer's additional arguments on appeal do not persuade us otherwise. Bayer urges on us a wealth of cases applying the death knell doctrine to render orders dismissing class claims appealable.[8] But none of them addressed the appealability of an order that also terminated individual claims. In the aftermath of *Daar*, we have repeatedly reaffirmed that an order that denies class certification or otherwise extinguishes class claims in their entirety is

---

[7] See *Dickinson v. Petroleum Corp.* (1950) 338 U.S. 507, 517 [94 L.Ed. 299, 70 S.Ct. 322] (dis. opn. of Black, J.) (ruing the "jungle of doubt" litigants must hazard in guessing whether certain orders are appealable); *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455–1456 [9 Cal.Rptr.2d 862] (the interests of all "are best served by maintaining . . . bright-line rules which distinguish between appealable and nonappealable orders"); *Kinoshita v. Horio, supra*, 186 Cal.App.3d at page 968 (in matters of appealability, "[a] definite rule is necessary to reduce both the temptation to file dilatory appeals and the compulsion to file protective ones.").

[8] California follows a "one shot" rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited. (See § 906 [the powers of a reviewing court do not include the power to "review any decision or order from which an appeal might have been taken" but was not]; *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 361 [19 Cal.Rptr.3d 29] ["Under any circumstances, a plaintiff will have one, and only one, opportunity to appeal an order that has the legal effect of disposing of all class claims."]; *Kinoshita v. Horio, supra*, 186 Cal.App.3d at p. 967 ["If [a] ruling *is* appealable, the aggrieved party *must* appeal or the right to contest it is lost."].) If the April 27, 2007, order was appealable, it follows that it had to be timely appealed or the right to challenge its particulars be forever lost.

appealable, but only in cases in which individual claims survived. (See, e.g., *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 306 [93 Cal.Rptr.3d 559, 207 P.3d 20]; *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 435; *Richmond v. Dart Industries, Inc., supra*, 29 Cal.3d at p. 470.) Likewise, until the Court of Appeal's decision in this case, in every previous instance in which the death knell doctrine had been applied, permitting appeal of a dismissal order, the appealed-from order had extinguished only class claims (see, e.g., *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1228 [49 Cal.Rptr.3d 892]; *Alch v. Superior Court, supra*, 122 Cal.App.4th at p. 360; *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 806–807 [50 Cal.Rptr.2d 736]), and where appeal was barred, the appellant was seeking, after entry of final judgment, to obtain review of an earlier order extinguishing only class claims (see, e.g., *Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 811 [1 Cal.Rptr.2d 130]; *Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465 [189 Cal.Rptr. 470]; *Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 908 [142 Cal.Rptr. 527]). The precedent Bayer cites is thus unhelpful and unpersuasive.

As well, Bayer contends *Daar, supra*, 67 Cal.2d 695, itself is on all fours with this case and requires us to treat the order here as appealable because in *Daar*, as here, the trial court entered an order sustaining a demurrer as to both class and individual claims. This argument elevates form over substance. As noted above, while the *Daar* trial court sustained a demurrer to the individual claims, it did so because, once class claims were removed, the individual claims failed to satisfy the superior court jurisdictional minimum. It therefore transferred the individual claims to the municipal court. Accordingly, in *Daar*, unlike here, individual claims survived the order terminating class claims.

Finally, Bayer expresses concern that departing from the "rule" that orders terminating class claims are always appealable, no matter the disposition of individual claims, would create uncertainty and confusion, requiring courts on a case-by-case basis to assess the degree of "divergence" between the interests of would-be class members and individual named plaintiffs. But as *Daar* did not declare any such rule, no departure is involved here. In any event, no case-by-case assessment of divergence is needed. If an order terminates class claims, but individual claims persist, the order terminating class claims is immediately appealable under *Daar*'s death knell doctrine. If an order terminates class claims and individual claims as well, it is not. Because the order here fell in the latter category, it was nonappealable, and it was error to treat the subsequent appeal from a final judgment as untimely.

## Disposition

For the foregoing reasons, we reverse the Court of Appeal's judgment and remand this case for further proceedings consistent with this opinion.

Cantil-Sakauye, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.