Filed 11/26/25  Pellegrini v. Fresno County Public Guardian CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BEVERLY PELLEGRINI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>FRESNO COUNTY PUBLIC GUARDIAN, as Trustee, etc. et al.,<br><br>    Defendants and Respondents. | F088717<br><br>(Super. Ct. No. 10CEPR00683)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Beverly Pellegrini, in pro. per., for Plaintiff and Appellant.

Peter Wall, Interim County Counsel, Heather H. Kruthers, Chief Deputy County Counsel, for Defendant and Respondent Fresno County Public Guardian.

Marleen Merchant, in pro. per., for Defendant and Respondent Marleen Merchant.

-ooOoo-

On June 18, 1999, Lillian Dorothy Pellegrini (Lillian)[1] and her husband Angelo John Pellegrini (Angelo) executed the "Angelo John Pellegrini and Lillian Dorothy Pellegrini Revocable Living Trust" (Trust).  (Boldface & underscoring omitted.)  The Trust provided Marleen Joyce Merchant (Marleen) and Beverly Jean Pellegrini (Beverly)—Lillian and Angelo's daughters—would receive the remainder of the Trust estate in equal shares after Lillian and Angelo died.

During their joint lifetimes, Lillian and Angelo were cotrustees of the Trust. Following Angelo's death on March 27, 2008, Lillian became the sole trustee.  Under the terms of the Trust, upon the death of the first spouse, the surviving spouse was required to divide the Trust estate into three subtrusts—a " 'Survivor's Trust,' " a " 'Marital Trust,' " and a " 'Family Trust' "—and fund them.  In probate proceedings in the 2010's, the superior court found Lillian repeatedly refused to fund the Family Trust and wrongfully took assets belonging thereto in bad faith.  The court removed Lillian as trustee and appointed the Fresno County Public Guardian (Public Guardian) as successor trustee. Lillian appealed from some—but not all—appealable orders and this court affirmed them in 2016.  (*Merchant v. Pellegrini* (Oct. 31, 2016, F072656) [nonpub. opn.].)

Lillian passed away on November 6, 2023.  On April 2, 2024, Beverly filed a motion as Lillian's "personal representative" and "successor in interest" to "void all previous orders, opinions and judgments."  The superior court denied this motion in an August 13, 2024 order.  On August 27, 2024, Beverly filed a motion to vacate the August 13, 2024 order.  The court treated the August 27, 2024 motion as one for reconsideration and denied it in a September 18, 2024 order.  In a separate September 18, 2024 order, the court approved, allowed, and settled the Public Guardian's ". . . Final Account Current and Report . . ." (some capitalization omitted) covering the period of

---

[1] In this opinion, we refer to individuals by their first names for clarity and convenience.  No disrespect is intended.

March 24, 2018, through March 12, 2024; authorized compensation to the Public Guardian and its attorney for services rendered during the period of accounting; authorized payment of a bond fee from the estate; and authorized distribution of the Family Trust's remaining assets to Marleen and Beverly in equal shares. On appeal from these three orders,[2] Beverly makes numerous contentions that have already been decided in the earlier proceedings and/or invite us to ignore established findings. She also provides briefing with deficiencies fatal to appellate review. For the reasons set forth below, we affirm the orders.

## BACKGROUND

The following background is taken from the appellate record, which does not include a reporter's transcript.

## I. Provisions of the Trust instrument

### a. *The subtrusts*

Upon the death of the first spouse, the surviving spouse—as the sole trustee— "shall divide the Trust estate" "into three separate trusts": the Survivor's Trust, the Marital Trust, and the Family Trust.

The share of the Trust estate to be allocated to the Survivor's Trust "shall consist of the Surviving Spouse's interest in the Trustors' community property and the Surviving Spouse's separate property, if any . . . ." "The entire net income from the Survivor's Trust shall be distributed currently to the Surviving Spouse in quarter-annual or more frequent installments during his/her life." "The Trustee may pay to or apply for the

---

[2] The "Notice of Appeal" (boldface & capitalization omitted) indicated Beverly appeals from orders entered "August 13, 2024 and September 18, 2024." Attached to the civil case information statement were (1) a probate minute order accompanied by a detailed written ruling entered on August 13, 2024; (2) a probate minute order accompanied by a detailed written ruling entered on September 18, 2024; and (3) a second probate minute order, without accompanying written order, also entered on September 18, 2024.

benefit of the Surviving Spouse so much of the principal of [the Survivor's] Trust as the Trustee may deem proper or necessary to provide the Surviving Spouse with reasonable support, care, comfort or happiness." Upon the death of the surviving spouse, "the principal of [the Survivor's] Trust shall be added to the Family Trust and distributed in the same fashion as provided for hereinafter [regarding the Family Trust]."

The share of the Trust estate to be allocated to the Marital Trust "shall consist of the minimum dollar amount necessary for a marital deduction to eliminate (or to reduce to the extent possible) any federal estate tax at the death of the Deceased Spouse . . . ." "It is the Deceased Spouse's intent that assets qualifying for the federal estate tax marital deduction shall be transferred to the Marital Trust only to the extent that such transfer would effect a reduction in the federal estate tax otherwise payable by the Deceased Spouse's estate." "The entire net income from the Marital Trust shall be distributed currently to the Surviving Spouse in quarter-annual or more frequent installments during his/her life." "The Trustee may pay to or apply for the benefit of the Surviving Spouse so much of the principal, up to the whole thereof, as the Trustee deems appropriate for the surviving spouse's health, general welfare and support in accordance with his/her accustomed standard of living . . . ." Upon the death of the surviving spouse, the principal of the Marital Trust "shall be distributed" "as follows: One (1) share for each of the Trustors' then living children and one (1) share for each group of issue of any deceased child by right of representation."

The share of the Trust estate to be allocated to the Family Trust "shall consist of the balance of the Trust Estate representing the balance of the Deceased Spouse's interest in the Trustors' community property and the balance of the Deceased Spouse's separate property included in the Trust Estate but after the allocation of such property to the Marital Trust." "The Trustee shall distribute the income and so much of the principal [of the Family Trust] as the Trustee deems appropriate in the event of accident, illness or like emergency to the Surviving Spouse or to maintain the Surviving Spouse in his or her

4.

accustomed standard of living or for extended care." Upon the death of the surviving spouse, "the entire principal and any accrued income shall be distributed as follows: One (1) share for each of Trustors' then living children and one (1) share for each group of issue of any deceased child by right of representation."

b. *Power to amend or revoke the Trust*

During their joint lifetimes, Angelo and Lillian were free to revoke "in whole or in part" or amend "any of the terms of" the Trust. Upon the death of first spouse, the surviving spouse "shall have the power to amend, revoke or terminate the Survivor's Trust, but the Marital Trust or the Family Trust may not be amended, revoked or terminated on the death of the Deceased Spouse."

c. *2004 amendment to the Trust*

On August 11, 2004, Angelo and Lillian executed an amendment to the Trust, which revised the provision regarding the distribution of the Family Trust upon the death of the surviving spouse. The amendment primarily focused on one item of Trust property—Angelo and Lillian's residence in San Francisco—and provided Beverly with a right to a life estate therein that could be used or relinquished by her, after which an equal division between the trustors' two daughters would be carried out. Other provisions of the Trust remained unchanged.

After Angelo's death, Lillian sold the San Francisco residence in 2009.

## II. Earlier court proceedings

a. *Fresno Superior Court*

On July 3, 2012, Marleen—as a remainder beneficiary—filed a petition to remove Lillian as trustee, appoint a successor trustee, and obtain other relief. According to the petition, Lillian refused to provide information concerning the Trust assets following Angelo's death. In 2010, Marleen successfully applied to the superior court for an order compelling Lillian to provide an accounting of the assets as of the time of Angelo's death as well as information on how the assets were allocated between the three subtrusts. On

December 3, 2010, Lillian—then represented by counsel—filed and signed under penalty of perjury a "STATEMENT OF TRUST ASSETS AS OF MARCH 27, 2008." Included with this statement was a summary of a purported allocation of Trust assets valued at $544,386.91 to the Family Trust. Among the assets set forth in the allocation was one-half of the $800,000 value of the San Francisco residence as of March 27, 2008, or $400,000. In 2011, however, Lillian—then no longer represented by counsel—directly contradicted or repudiated the statement. Specifically, in a letter dated September 27, 2011, in response to a request by Marleen's attorney for further information and accounting concerning the Family Trust, Lillian asserted no Family Trust existed, there were no assets in the Family Trust, and no assets were ever allocated or distributed to a Family Trust. Consequently, Lillian breached the Trust in two ways: (1) by failing to fund the Family Trust; and (2) even if the Family Trust had been funded, by making contradictory and bad faith representations to the beneficiaries, which displayed her unfitness to serve.

On January 13, 2014, Marleen filed a petition for the recovery of property belonging to the Family Trust and awards for double damages and attorney's fees and costs under Probate Code section 859. This petition was based on essentially the same factual allegations as the July 3, 2012 petition, but it raised new allegations related to a revised accounting filed by Lillian in 2013. In said accounting, Lillian (1) confirmed no Family Trust was ever created or funded following Angelo's death; (2) claimed the San Francisco real property was entirely her separate property upon Angelo's death; and (3) admitted she held assets that were formerly in the Trust estate in her own name individually and outside of the Trust. The petition further alleged: " '[B]y purposefully and continuously refusing over the last five years to follow the provisions of the Trust agreement that require her to create a Family Trust, Lillian has in bad faith wrongfully taken, concealed and disposed of property belonging to the Family Trust.' "

Marleen subsequently moved to bifurcate the issues. The superior court granted the request on June 17, 2014. Under the bifurcation order, a trial on " 'the issues of

6.

(a) whether the Family Trust was required to be funded after [Angelo's] death and . . . (b) whether the title to the San Francisco real property maintained its joint tenancy characterization after being transferred to [the Trust]' " would proceed first. Outstanding issues would be set for separate trials.

On January 14, 2015, the first trial commenced. After considering the evidence presented and the parties' arguments, the superior court issued its findings and order after trial on January 20, 2015. It found—by clear and convincing evidence—" 'the Family Trust was required to be funded following the death of Angelo . . . on March 27, 2008,' " and "should have been funded with" " 'a minimum of $544,386.91' " at that time. The court also found—by clear and convincing evidence—" 'the title to the San Francisco real property did not maintain its joint tenancy characterization after being transferred to the Trust.' " On January 28, 2015, Marleen served a notice of entry of the January 20, 2015 order. Lillian did not appeal from this order.

On May 11, 2015, a hearing was held to determine whether Lillian should be removed as trustee of the Family Trust. In an order filed May 15, 2015, the superior court (1) ordered Lillian's removal as trustee of the Family Trust " 'for failing to fund the Family Trust after the death of Angelo' "; and (2) appointed the Public Guardian as the successor trustee for the Family Trust. Furthermore, the order directed Lillian " 'to fund the Family Trust in the amount of $544,386.91, and [to] pay said amount to the . . . Public Guardian as the Successor Trustee of the Family Trust . . . .' " On May 21, 2025, Marleen served a notice of entry of the May 15, 2015 order. Lillian did not appeal from this order.

On August 25, 2015, one more trial was conducted to resolve the remaining issues. The superior court reviewed the court file, heard the testimony of witnesses, considered other evidence presented at trial, and heard the arguments of counsel and Lillian. In its findings and order after trial issued September 4, 2015, the court pronounced:

7.

" '1. . . . Lillian . . . is in default with respect to the Petition to Recover Property Belonging to Trust, For Award of Double Damages, And For Recovery of Attorneys' Fees and Costs, as she does not have a written response on file to that petition.

" '2. Further, based on the evidence of

" '(a) [Lillian's] repeated misrepresentations regarding the funding of the Family Trust;

" '(b) [Lillian's] deliberate refusal to fund the Family Trust, even in the face of court orders to do so;

" '(c) [Lillian's] repeated delay of the proceedings through the filing of frivolous motions and proceedings; and,

" '(d) [Lillian's] outright refusal to comply with the terms of [the Trust],

" 'the [c]ourt finds that . . . Lillian . . . in bad faith wrongfully took assets belonging to the Family Trust, and double damages are awarded pursuant to [Probate Code] section 859.

" '3. The evidence is uncontradicted that . . . Lillian . . . repeatedly breached the standard of care with respect to her duties as trustee, including, among other things, by failing to fund the Family Trust, even after being ordered to do so. The [c]ourt finds that this conduct justifies an award of attorneys' fees and costs in favor of . . . Marleen . . . as a surcharge against . . . Lillian . . . .' "

Based on the above findings, the court ordered Lillian to " 'pay double damages in the amount of $544,386.91 to the . . . Public Guardian as the Successor Trustee of the Family Trust . . . pursuant to . . . [Probate Code] section 859' " " 'in addition to the $544,386.91 that [Lillian] was already ordered to pay to the . . . Public Guardian as the Successor Trustee of the Family Trust' " (italics omitted) pursuant to the May 15, 2015 order. The court also ordered Lillian to be " 'surcharged for the attorneys' fees and costs that . . . Marleen . . . has incurred in this matter in the amount of $439,497.62.' "

In mid-October 2015, as Lillian continued to take no action to comply with the superior court's orders, the Public Guardian filed an ex parte application seeking to

8.

enforce the judgment embodied in the September 4, 2015 order against a financial account held by Lillian. The application alleged relief was sought on an ex parte basis due to Lillian repeatedly stating she would not fund the Family Trust, which created a reasonable likelihood she would attempt to move or conceal assets if a noticed motion were brought. On October 20, 2015, the superior court granted the ex parte relief sought by the Public Guardian, including freezing Lillian's accounts at UBS Financial Services (UBS) until further order of the court and requiring UBS to transfer the sum of $1,528,271.44 to the Public Guardian in full satisfaction of the September 4, 2015 order. There was insufficient cash in Lillian's accounts to satisfy the entire judgment, but not all the assets were in the form of cash. A November 16, 2015 follow-up order authorized the Public Guardian to direct UBS as to which noncash assets to liquidate. Lillian did not appeal from the November 16, 2015 order. She filed a motion for a writ of supersedeas or—in the alternative—a writ of prohibition relating to the postjudgment orders, which this court denied on January 19, 2016.

  b. *Fifth District Court of Appeal*

  On October 28, 2015, Lillian appealed from the September 4, 2015 order and the October 20, 2015 postjudgment order. At the outset, this court noted "affirmance would appear to be supportable based on the deficiencies in the record alone,"[3] but it would "nonetheless briefly consider Lillian's main arguments" "in an abundance of caution." (*Merchant v. Pellegrini*, *supra*, F072656.)

  First, Lillian argued "(1) the Trust was wholly revocable by [her] after Angelo's death and . . . she did not have to fund the Family Trust and (2) the San Francisco real property, after being transferred into the Trust, retained its joint tenancy status and became her separate property upon Angelo's death." This court pointed out "those issues

---

  **3** These "glaring deficiencies" included a "minimal record" that did not contain either a clerk's transcript or a reporter's transcript and sporadic citations thereto in the opening brief. (*Merchant v. Pellegrini*, *supra*, F072656.)

were resolved against Lillian in the January 2015 Order and . . . cannot be raised by Lillian in the present appeal" because she "did not file a timely appeal (or any appeal) from the January 2015 Order."[4, 5]  This court also pointed out any other arguments against the validity of the January 20 and May 15, 2015 orders were forfeited  because "th[e]se orders were not timely appealed by [Lillian] and are not subject to [a] belated collateral attack in an appeal from a subsequent order."[6]  (*Merchant v. Pellegrini*, *supra*, F072656.)

Next, Lillian "characterize[d] her arguments challenging the validity of th[e] [January 20 and May 15, 2015] orders as jurisdictional," i.e., "she claim[ed] the trial court exceeded its power or jurisdiction to act."  This court believed this to be "an apparent effort to get around the problem of failing to timely appeal from the prior orders" and opted to "briefly address Lillian's arguments to the extent that she has portrayed the alleged errors as jurisdictional."  (Italics omitted.)  Lillian contended "Marleen lacked standing to seek any relief under [Probate Code] section 17200 and the trial court was without power to grant Marleen's petition."  She advanced "substantially the same . . . argument concerning the May 2015 Order removing Lillian as trustee of the

---

[4] This court rejected Lillian's assertion "the January 2015 Order was 'interlocutory and not subject to appeal,' " citing Probate Code section 1304, subdivision (a). (*Merchant v. Pellegrini*, *supra*, F072656.)

[5] This court later added "case law adequately supported the trial court's determination that the San Francisco real property was no longer in joint tenancy once it was transferred by the trustors into the Trust." (*Merchant v. Pellegrini*, *supra*, F072656.)

[6] For instance, this court highlighted Lillian's argument "the Family Trust became invalid as a result of the 2024 amendment because that amendment, by focusing primarily on the San Francisco real property, allegedly left out an explicit beneficiary designation for the personal property in the Family Trust upon the death of the surviving spouse." (Italics omitted.)  On top of "completely reject[ing] [any] attacks on the trial court's orders requiring the funding of the Family Trust" as forfeited, this court noted "[t]he trial court implicitly rejected" the aforementioned claim "because it[s] order requiring that the Family Trust be funded necessarily included the court's conclusion that the Family Trust was valid." (*Merchant v. Pellegrini*, *supra*, F072656.)

10.

Family Trust and appointing the . . . Public Guardian as successor trustee."  This court observed these arguments "relie[d] on Lillian's assumption that the Trust was entirely revocable by her at all times, even after Angelo's death," which was "a false foundational premise" because "the Trust clearly provided that after the death of the first spouse, the Trust assets were to be divided into the separate subtrusts and only the Survivor's Trust would remain revocable."  (*Merchant v. Pellegrini*, *supra*, F072656.)

With regard to the October 20, 2015 postjudgment order, from which she timely appealed, Lillian argued she "was entitled to a noticed hearing" because the order "entailed the taking or transfer of property."  This court explained (1) it could not be "adequately apprised of the exact nature or extent of any alleged deficiency of notice or opportunity to be heard" because Lillian "failed to provide a sufficient record"; and (2) "ex parte relief may be granted on extremely short notice" "[w]here exceptional circumstances are present," but "Lillian's appeal fail[ed] to address the issue of whether her ongoing defiance of the trial court's direct orders to fund the Family Trust, and the risk implied therefrom that she would seek to hide or conceal assets to prevent enforcement of the Damages Order may have provided justification for the trial court to proceed on an ex parte basis in this particular instance."  (*Merchant v. Pellegrini*, *supra*, F072656.)

Lillian then argued "all of the proceedings in the trial court below . . . must be set aside based on an alleged failure to join Beverly as an indispensable party under Code of Civil Procedure section 389."  This court determined she "forfeited the issue" because she "fail[ed] to cite anything in the record to indicate that she ever pursued a motion to bring Beverly in as a party or that she otherwise raised the argument in the trial court."  Lastly, Lillian appeared to contend "the trial court's rulings should be reversed because the trial court allegedly engaged in or abetted the commission of fraud and embezzlement when it permitted the judgment to be enforced against Lillian's financial account at UBS" and "the ex parte petitions contained perjured declarations."  This court found these

11.

claims "largely unintelligible and without any support in the record" and deemed them forfeited.  (*Merchant v. Pellegrini*, *supra*, F072656.)

In affirming the judgment and orders, this court concluded Lillian's appeal "failed to establish any reversible error or abuse of discretion in regard to the [previous] orders of the trial court."  (*Merchant v. Pellegrini*, *supra*, F072656.)  The California Supreme Court denied a petition for review.  (See *ibid.*, review den. Jan. 11, 2017, S238760.)  The remittitur was issued January 12, 2017.

    c.  *Federal court*

Following the foregoing state court proceedings, Lillian filed a federal action against Fresno County (including the Public Guardian), the superior court, three banks (including UBS), and Marleen's counsel.  (*Pellegrini v. Fresno County* (9th Cir. 2018) 742 Fed.Appx. 209, 210.)  The federal district court "dismissed the complaint with prejudice for lack of subject-matter jurisdiction."  (*Ibid.*)  On appeal, the Ninth Circuit Court of Appeals held:  (1) both the Eleventh Amendment and the *Rooker-Feldman* doctrine deprived the district court of jurisdiction over Lillian's claims against the superior court (*Pellegrini v. Fresno County*, *supra*, 742 Fed.Appx. at p. 210); (2) Lillian "failed to 'specifically and distinctly' argue on appeal why the district court had subject-matter jurisdiction over the fraud and conversion claims against the other defendants" and forfeited the issue (*ibid.*); (3) Lillian's claims "directly contravene[d] the Superior Court's holding that these assets belonged to the trust" and "[t]he district court lacked jurisdiction over these 'inextricably intertwined' claims, as . . . 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling' " (*ibid.*); and (4) Lillian's "arguments of extrinsic fraud fail" as she "d[id] not contend that she was deprived of the ability to present her case in state court" (*id.* at p. 211).  Nevertheless, the Ninth Circuit "vacate[d] the dismissal with prejudice and remand[ed] with directions that the dismissal be without prejudice" to allow Lillian to reassert her claims in a competent court.  (*Ibid.*)

## III.    Current court proceedings

On April 2, 2024, Beverly—proceeding in propria persona—brought a survival action (Code Civ. Proc., § 377.30; Prob. Code, § 13107.5), moving to "void all previous orders, opinions and judgments" pursuant to Probate Code section 7250 and asking for "full restitution of the property taken from Lillian" and "all damages to which Lillian . . . is entitled by law."  Beverly presented various arguments that Lillian raised and the superior court addressed in earlier proceedings, such as:  (1) Marleen lacked standing to petition for Lillian's removal as trustee; (2) the superior court exceeded its jurisdiction by ordering Lillian's removal as trustee and appointing the Public Guardian as successor trustee; (3) the failure to join Beverly as a party voided the superior court's judgment and rulings; (4) the Family Trust could not be funded; and (5) the San Francisco residence was Lillian's separate property upon Angelo's death.  Beverly also presented new arguments, including:  (1) the superior court exceeded its jurisdiction by issuing the November 16, 2015 ex parte order liquidating Lillian's assets; (2) Lillian was prevented from fully participating in the earlier proceedings and was deprived of a fair adversary hearing; (3) Marleen made false representations at the time she petitioned to remove Lillian as trustee; (4) Marleen, Marleen's attorney, UBS, and the superior court knew the San Francisco residence was Lillian's separate property upon Angelo's death yet engaged in fraudulent conversion; (5) the Public Guardian improperly consented to be trustee of the Family Trust, which was nonexistent, or otherwise breached the Family Trust; and (6) distribution of Lillian's "misappropriated sole and separate property" held in the Family Trust was limited to Beverly.

On April 11, 2024, the Public Guardian concurrently filed a "Third and Final Account Current and Report of Successor Trustee" (some capitalization omitted) covering the period of March 24, 2018, through March 12, 2024, and a "Petition for Allowance of Compensation to Trustee and Attorney and Distribution" (some capitalization omitted).  The Public Guardian asked the superior court to (1) approve,

13.

allow, and settle the account and report; (2) authorize compensation in the amount of $1,731.84 to the Public Guardian and $2,500 to the Public Guardian's attorney for services rendered to the Family Trust during the period of accounting; (3) permit the Public Guardian to pay a $16,128.18 bond fee from the Family Trust; and (4) allow distribution of the Family Trust's remaining assets to Marleen and Beverly in equal shares. On May 22, 2024, Beverly filed an opposition thereto.

In an August 13, 2024 order, the superior court denied Beverly's motion to void all previous orders, opinions, and judgments. In its statement of decision, the court reasoned:

> "[Beverly] argues that the trial court lacked jurisdiction, arguing that Marleen lacked standing under Probate Code sections 15800 and 17200. Lillian made the same argument in her appeal. This question has been decided by the Fifth District Court of Appeal[] and denied review by the California Supreme Court. The appellate court noted that this argument was based on a false foundational premise that the entire Trust was revocable after Angelo's death. [Citation.] [Beverly] also argues that the court lacked jurisdiction when it removed Lillian as trustee and appointed the [P]ublic [G]uardian. Similarly, the appellate court has already addressed this issue noting Lillian's arguments were based on the same faulty premise of a revocable trust and that there was no jurisdictional error. [Citation.] [Beverly] also repeats Lillian's previous argument that the ex parte order to liquidate assets was void for lack of notice. The appellate court has already considered this issue and noted that Lillian had failed to show error. [Citation.] The appellate court additionally noted that there are circumstances in which the court may dispense with notice. [Citation.] [Beverly] also repeats Lillian's previous argument that lack of joinder is fatal to the judgment. The appellate court has already considered this argument and found this issue was not jurisdictional. [Citation.] For all of the claims [Beverly] makes now regarding the trial court's lack of jurisdiction to make the 2015 orders, the appellate court has already addressed that none of these jurisdictional arguments have merit. This court will not disturb the findings already made by the appellate court. [¶] . . . [¶]
>
> ". . . [Beverly] argues that this court's 2015 orders were based on fraud and that they should be considered void.

14.

". . . [Beverly], who is not licensed to practice law in the State of California, claims she was not permitted to be present in the courtroom during the August 2015 hearing. As such, Lillian was unable to call [Beverly] as a witness for tracing Lillian's financial assets. Then, Lillian who had been present in the morning was, for reasons not explained in the motion, unable to attend court in the afternoon. [Beverly] requested the court postpone the proceedings, which was denied. This does not amount to being denied the opportunity to be heard. If anything, this amounted to the court ensuring that a person not licensed to practice law in the State of California did not attempt to do so. Additionally, it appears that Lillian failed to appear for a portion of the hearing and did not have a justifiable excuse for that failure to participate. [¶] . . . [N]othing has been presented by [Beverly] showing that anyone prevented Lillian from participating in the hearings.

"Notably, [Beverly]'s claims of extrinsic fraud are still based on the faulty premises already addressed by the appellate court. The appellate court has already noted that Lillian's claims about the nature of the property were faulty. [Citation.] [Beverly] also reiterates the previous claims that the San Francisco property should have been treated as Lillian's separate property. This court determined this question at the January 14, 2015 trial, finding that the property did not maintain its joint tenancy characterization after being transferred to the Trust. [Citation.] Lillian did not appeal this order. [Citation.] Additionally, nothing presented by [Beverly] now indicates that this court relied on any fraudulent piece of evidence, rather it appears that [Beverly] acknowledges that the court interpreted the same evidence she would intend to present now. [Beverly] disagrees with how the evidence was ultimately interpreted.

"[Beverly] also argues that Marleen made false representations when she claims to be a beneficiary of the Trust. As discussed above, [Beverly] is relying on a faulty premise regarding this argument. [Beverly]'s claim that Marleen, her attorney, this court, and UBS . . . knew claims that the real property converted to community property upon transfer to a trust were false is similarly based on a faulty premise. [Beverly]'s claims that the Public Guardian breached the Trust when consenting to be the trustee is also based on a faulty premise.

"[Beverly] has failed to present any reason for the court to find any of its previous orders void based on extrinsic fraud. Additionally, [Beverly]'s remaining arguments regarding failures alleged against the Public Guardian are not well taken. [Beverly]'s arguments rely on this court finding that its previous orders should be voided. This court is not

finding so and therefore the remainder of [Beverly]'s arguments regarding the Public Guardian similarly fail. . . ."  (Fn. omitted.)

On August 27, 2024, Beverly filed a motion to vacate the August 13, 2024 minute order based on "clear error of facts."  The superior court, which noted Beverly "ha[d] not provided any legal authority for the basis of her motion," treated the motion as one for reconsideration under Code of Civil Procedure section 1008 and denied it in a September 18, 2024 order.  In its ruling, it explained:

> "A motion for reconsideration is to be made by affidavit including the new law or facts the moving party claims.  [Citation.]  Here, Beverly . . . has not included any affidavit, but only what amounts to a Memorandum of Points and Authorities.  If the Court were to consider the motion on the merits, there is no presentation of new law or facts.  Instead, Beverly . . . reasserts the same law and facts as were raised in her previous motion.

> "Code of Civil Procedure section 1008 does not limit the court's inherent power to reevaluate its own rulings.  [Citations.]  Trial courts have discretion to review interim orders and correct erroneous rulings and orders.  [Citation.]  This [c]ourt has, on multiple occasions, found no such error with regards to the issues both Lillian and Beverly . . . have repeatedly asserted.  Nor has it found any other errors in this matter."

In a separate September 18, 2024 order, the court approved, allowed, and settled the Public Guardian's final account current and report; authorized compensation to the Public Guardian and its attorney for services rendered during the period of accounting; authorized payment of a bond fee from the estate; and authorized distribution of the Family Trust's remaining assets to Marleen and Beverly in equal shares.

## DISCUSSION

### I.    Standard of review

"On appeal, we must presume the trial court's judgment is correct.  [Citation.]  In service of that rule, we adopt all intendments and inferences to affirm the judgment or order unless the record expressly contradicts them.  [Citation.]"  (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 (*Nielsen*).)  "It is the burden of the party challenging a

judgment on appeal to provide an adequate record to assess error. [Citation.] Thus, an appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited. [Citation.]" (*Ibid.*)

"The California Rules of Court provide an appellant with a choice of several types of records upon which to take an appeal. The choices include a reporter's transcript, a clerk's transcript, an agreed statement and a settled statement. [Citations.]" (*Nielsen, supra*, 178 Cal.App.4th at p. 324.) When the reporter's transcript is not provided by an appellant, as is the case here, "we must treat this as an appeal 'on the judgment roll' " (*ibid.*), " ' "conclusively presume that the evidence is ample to sustain the [superior court's] findings" ' " (*ibid.*), and limit our review "to determining whether any error 'appears on the face of the record' " (*id.* at pp. 324–325).

## II.    Analysis

### a.  *Probate Code section 13107.5*

"Where the money or property claimed in an affidavit or declaration executed under [Probate Code section 13100 et seq.] is the subject of a pending action or proceeding in which the decedent was a party, the successor of the decedent shall, without procuring letters of administration or awaiting probate of the will, be substituted as a party in place of the decedent by making a motion under Article 3 (commencing with Section 377.30) of Chapter 4 of Title 2 of Part 2 of the Code of Civil Procedure. The successor of the decedent shall file the affidavit or declaration with the court when the motion is made. For the purposes of Article 3 (commencing with Section 377.30) of Chapter 4 of Title 2 of Part 2 of the Code of Civil Procedure, a successor of the decedent who complies with this chapter shall be considered a successor in interest of the decedent." (Prob. Code, § 13107.5; see Code Civ. Proc., § 377.30 ["A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section

17.

7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."].)  This "survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent, but is instead a separate and distinct cause of action that belonged to the decedent before death, but by statute, survives that event."  (*Brenner v. Universal Health Services of Rancho Springs, Inc.* (2017) 12 Cal.App.5th 589, 605, fn. 9; see *id.* at p. 605 ["A survivor claim is a claim asserted on behalf of the victim or decedent."].)[7]

   b. *Arguments*

Beverly's various arguments on appeal do not compel us to reverse the superior court's August 13 and September 18, 2024 orders.

Beverly repeats Lillian's prior assertions the January 20, 2015 order was not appealable and the superior court should have joined Beverly as a party.  This court rejected these contentions in 2016.  " 'Litigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court.' [Citation.]"  (*Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 304.)

Beverly repeats Lillian's prior assertions the Family Trust was invalid and the San Francisco real property retained its joint tenancy status and became Lillian's separate property upon Angelo's death.  As this court pointed out in 2016, these contentions were rejected by the superior court in its January 20, 2015 order and Lillian did not appeal therefrom within 60 days after the notice of entry was served.  (See Cal. Rules of Court, rule 8.104(a)(1)(B).)  As a result, any right to challenge the January 20, 2015 order and its particulars is "forever lost."  (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8

---

[7] In its respondent's brief, the Public Guardian does not contest the applicability of Probate Code section 13107.5 in the instant case.  Marleen joined the brief.

18.

(*Baycol*); see *ibid.* ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited."].)

Beverly repeats Lillian's prior assertion the superior court's May 15, 2015 order wrongfully removed Lillian as trustee and wrongfully appointed the Public Guardian as successor trustee. As this court pointed out in 2016, Lillian did not timely appeal from this order. (See Cal. Rules of Court, rule 8.104(a)(1)(B).) Therefore, appellate review thereof has been forfeited. (*Baycol*, *supra*, 51 Cal.4th at p. 761, fn. 8.)

Beverly reasserts Lillian was prevented from fully participating in and deprived of a fair adversary hearing at the January 14 and May 11, 2015 proceedings. As this court pointed out in 2016, Lillian did not timely appeal from the January 20 and May 15, 2015 orders. (See Cal. Rules of Court, rule 8.104(a)(1)(B).) Therefore, appellate review of the proceedings underlying those orders has been forfeited. (*Baycol*, *supra*, 51 Cal.4th at p. 761, fn. 8.)

Beverly reasserts the November 16, 2015 ex parte liquidation order was void for want of jurisdiction. As this court pointed out in 2016, Lillian did not timely appeal from this order. (See Cal. Rules of Court, rule 8.104(a)(1)(B).) Therefore, appellate review thereof has been forfeited. (*Baycol*, *supra*, 51 Cal.4th at p. 761, fn. 8.)

Beverly contends "[n]o opportunity to be heard was provided regarding the Opposition to the Accounting" "or to contest the accounts at either 2024 hearing." However, no such error appears on the face of the record. (*Nielsen*, *supra*, 178 Cal.App.4th at pp. 324–325.) In particular, a September 18, 2024 probate minute order demonstrated a hearing was held on the Public Guardian's final account current and report and petition. A checkbox was marked indicating "all parties were given an opportunity to address the Court" before "the matter was submitted." The minute order also specified: "The Court notes Ms. Beverly Pellegrini's continuous objection to the distribution under the Trust as the fees and structure is currently fashioned." (Boldface omitted.)

19.

Beverly contends the Public Guardian is liable for breach of the Family Trust because it "produced negligible income depriving Lillian . . . of the opportunity to continue generating wealth on her rightfully owned sole and separate property that was converted by fraud during one of the most expansionary growth periods in our nation's history" and "distribut[ed] $439,497.62 of Lillian['s] . . . separate property to Marleen." She also contends the Public Guardian "knew that the property taken was Lillian['s] . . . sole and separate inherited assets over which the court or its agents have no jurisdiction" yet engaged in fraudulent conversion and transfer of these assets. These arguments essentially ask us to reexamine the superior court's January 20 and May 15, 2015 orders—from which Lillian did not appeal (see Cal. Rules of Court, rule 8.104(a)(1)(B))—and disregard explicit findings, namely (1) the Family Trust was valid and " 'required to be funded' " in the amount of $544,386.91 following Angelo's death; (2) the title to the San Francisco residence " 'did not maintain its joint tenancy characterization after being transferred to the Trust' "; (3) Lillian " 'repeatedly breached the standard of care with respect to her duties as trustee, including, among other things, by failing to fund the Family Trust, even after being ordered to do so' "; (4) Lillian " 'in bad faith wrongfully took assets belonging to the Family Trust' "; (5) Lillian was required " 'to fund the Family Trust in the amount of $544,386.91, and [to] pay said amount to the . . . Public Guardian as the Successor Trustee of the Family Trust' "; (6) Lillian was required to " 'pay double damages in the amount of $544,386.91 to the . . . Public Guardian as the Successor Trustee of the Family Trust' "; and (7) Lillian was required to be " 'surcharged for the attorneys' fees and costs that . . . Marleen . . . has incurred in this matter in the amount of $439,497.62.' " Appellate review of these findings has been forfeited. (*Baycol*, *supra*, 51 Cal.4th at p. 761, fn. 8.)

Beverly contends Lillian "held the sole and terminating interest in the Family Trust of any asset transferred to it" "with no remainder beneficiary designated" and "was due the 100% distribution of these assets." In 2016, this court rejected Lillian's earlier

contention Marleen had no standing to bring the 2012 and 2014 petitions. (See Prob. Code, § 17200, subd. (a) ["[A] trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust."].) Beverly's argument relies on a premise that contradicts this court's prior finding. (See *Joyce v. Simi Valley Unified School Dist.*, *supra*, 110 Cal.App.4th at p. 304.)

To close, we call attention to the assorted deficiencies in Beverly's appellate briefs. Various assertions lack "appropriate citations to the material facts in the record." (*Nielsen*, *supra*, 178 Cal.App.4th at p. 324; see *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 ["It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations."].) Sometimes, this is because an assertion deals with a matter that is not in the appellate record. (See *Citizens Opposing a Dangerous Environment v. County of Kern* (2014) 228 Cal.App.4th 360, 366, fn. 8 [" 'Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs.' "].) When Beverly does cite to the record, she usually refers to facts favoring her own position. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 ["An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment."].) Moreover, although Beverly ostensibly uses headings and subheadings in the body of her brief to identify her arguments, those headings and subheadings do not always match the content of the ensuing text. (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["An appellant must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority.' "].) Those headings and subheadings are made all the more unhelpful because Beverly's discussion of her claims often becomes unfocused. (See *Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 188, fn. 8 ["It is not this court's

role to connect the dots."]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."].)  While we are mindful Beverly represented herself on appeal, this fact does not excuse her missteps.  "Under the law, a party may choose to act as his or her own attorney.  [Citations.]  '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]'  [Citation.]"  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

## **DISPOSITION**

The August 13 and September 18, 2024 orders are affirmed.  Costs on appeal are awarded to defendants and respondents Fresno County Public Guardian and Marleen Merchant.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

PEÑA, J.